UNITED STATES *v.* BISWELL

No. 71–81. Argued March 28, 1972—Decided May 15, 1972

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, STEWART, MARSHALL, POWELL, and REHNQUIST, JJ., joined. BLACKMUN, J., filed an opinion concurring in the result, *post,* p. 317. DOUGLAS, J., filed a dissenting opinion, *post,* p. 317.

*R. Kent Greenawalt* argued the cause for the United States. On the brief were *Solicitor General Griswold, Assistant Attorney General Petersen, Jerome M. Feit, Beatrice Rosenberg,* and *Kirby W. Patterson.*

*Warren F. Reynolds* argued the cause and filed a brief for respondent.

*John S. Edmunds* and *Melvin L. Wulf* filed a brief for the American Civil Liberties Union as *amicus curiae* urging affirmance.

MR. JUSTICE WHITE delivered the opinion of the Court.

The Gun Control Act of 1968, 82 Stat. 1213, 18 U. S. C. § 921 *et seq.,* authorizes official entry during business hours into "the premises (including places of storage) of any firearms or ammunition . . . dealer . . . for the purpose of inspecting or examining (1) any records or documents required to be kept . . . and (2) any firearms or ammunition kept or stored by such . . . dealer . . . at

such premises." [1]  18 U. S. C. § 923 (g).  Respondent,
a pawn shop operator who was federally licensed to deal
in sporting weapons, was visited one afternoon by a
city policeman and a Federal Treasury agent who identi-
fied himself, inspected respondent's books, and requested
entry into a locked gun storeroom.  Respondent asked
whether the agent had a search warrant, and the investi-
gator told him that he did not, but that § 923 (g) author-
ized such inspections.  Respondent was given a copy of
the section to read and he replied, "Well, that's what it
says so I guess it's okay."  Respondent unlocked the
storeroom, and the agent found and seized two sawed-off
rifles which respondent was not licensed to possess.  He
was indicted and convicted for dealing in firearms with-

---

[1] "Each licensed importer, licensed manufacturer, licensed dealer,
and licensed collector shall maintain such records of importation,
production, shipment, receipt, sale, or other disposition, of firearms
and ammunition at such place, for such period, and in such form
as the Secretary [of the Treasury] may by regulations prescribe.
Such importers, manufacturers, dealers, and collectors shall make
such records available for inspection at all reasonable times, and
shall submit to the Secretary such reports and information with
respect to such records and the contents thereof as he shall by
regulations prescribe.  The Secretary may enter during business
hours the premises (including places of storage) of any firearms
or ammunition importer, manufacturer, dealer, or collector for the
purpose of inspecting or examining (1) any records or documents
required to be kept by such importer, manufacturer, dealer, or
collector under the provisions of this chapter or regulations issued
under this chapter, and (2) any firearms or ammunition kept or
stored by such importer, manufacturer, dealer, or collector at such
premises.  Upon the request of any State or any political sub-
division thereof, the Secretary may make available to such State
or any political subdivision thereof, any information which he may
obtain by reason of the provisions of this chapter with respect to
the identification of persons within such State or political subdivision
thereof, who have purchased or received firearms or ammunition,
together with a description of such firearms or ammunition." 18
U. S. C. § 923 (g).

out having paid the required special occupational tax.[2] The Court of Appeals reversed, however, holding that § 923 (g) was unconstitutional under the Fourth Amendment because it authorized warrantless searches of business premises and that respondent's ostensible consent to the search was invalid under *Bumper* v. *North Carolina,* 391 U. S. 543 (1968). The Court of Appeals concluded that the sawed-off rifles, having been illegally seized, were inadmissible in evidence. 442 F. 2d 1189 (CA10 1971). We granted certiorari, 404 U. S. 983 (1971), and now reverse the judgment of the Court of Appeals.

As the Court of Appeals correctly recognized, we had no occasion in *See* v. *City of Seattle,* 387 U. S. 541 (1967), to consider the reach of the Fourth Amendment with respect to various federal regulatory statutes. In *Colonnade Catering Corp.* v. *United States,* 397 U. S. 72 (1970), we dealt with the statutory authorization for warrantless inspections of federally licensed dealers in alcoholic beverages. There, federal inspectors, without a warrant

---

[2] Respondent was licensed under 18 U. S. C. § 923 to sell certain sporting weapons as defined in 18 U. S. C. § 921. The sawed-off rifles, however, fell under 26 U. S. C. § 5845's technical definition of "firearms," and every dealer in such firearms was required by 26 U. S. C. § 5801 to pay a special occupational tax of $200 a year. Such firearms are also required to be registered to a dealer in the National Firearms Registration and Transfer Record. 26 U. S. C. § 5841. Respondent was indicted on six counts. Count I, on which he was convicted, charged that he had "wilfully and knowingly engaged in business as a dealer in firearms, as defined by 26 U. S. C. 5845 . . . without having paid the special (occupational) tax required by 26 U. S. C. 5801 for his business." Counts II–V, on which he was acquitted, charged that he had possessed certain firearms that were not identified by serial number, as required by 26 U. S. C. § 5842, and that were not registered in the National Firearms Registration and Transfer Record, as required by 26 U. S. C. § 5841. Count VI, which charged respondent with failing to maintain properly the records required under 18 U. S. C. § 923, was severed and is awaiting trial.

and without the owner's permission, had forcibly entered a locked storeroom and seized illegal liquor. Emphasizing the historically broad authority of the Government to regulate the liquor industry and the approval of similar inspection laws of this kind in *Boyd* v. *United States,* 116 U. S. 616 (1886),[3] we concluded that Congress had ample power "to design such powers of inspection under the liquor laws as it deems necessary to meet the evils at hand." 397 U. S., at 76. We found, however, that Congress had not expressly provided for forcible entry in the absence of a warrant and had instead given Government agents a remedy by making it a criminal offense to refuse admission to the inspectors under 26 U. S. C. § 7342.

Here, the search was not accompanied by any unauthorized force, and if the target of the inspection had been a federally licensed liquor dealer, it is clear under *Colonnade* that the Fourth Amendment would not bar a seizure of illicit liquor. When the officers asked to inspect respondent's locked storeroom, they were merely asserting their statutory right, and respondent was on

---

[3] "The seizure of stolen goods is authorized by the common law; and the seizure of goods forfeited for a breach of the revenue laws, or concealed to avoid the duties payable on them, has been authorized by English statutes for at least two centuries past; and the like seizures have been authorized by our own revenue acts from the commencement of the government. The first statute passed by Congress to regulate the collection of duties, the act of July 31, 1789, 1 Stat. 29, 43, contains provisions to this effect. As this act was passed by the same Congress which proposed for adoption the original amendments to the Constitution, it is clear that the members of that body did not regard searches and seizures of this kind as 'unreasonable,' and they are not embraced within the prohibition of the amendment. . . . [I]n the case of excisable or dutiable articles, the government has an interest in them for the payment of the duties thereon, and until such duties are paid has a right to keep them under observation, or to pursue and drag them from concealment." 116 U. S., at 623–624 (footnote omitted).

notice as to their identity and the legal basis for their action. Respondent's submission to *lawful* authority and his decision to step aside and permit the inspection rather than face a criminal prosecution [4] is analogous to a householder's acquiescence in a search pursuant to a warrant when the alternative is a possible criminal prosecution for refusing entry or a forcible entry. In neither case does the lawfulness of the search depend on consent; in both, there is lawful authority independent of the will of the householder who might, other things being equal, prefer no search at all. In this context, *Bumper* v. *North Carolina,* 391 U. S. 543 (1968), is inapposite, since there the police relied on a warrant that was never shown to be valid; because their demand for entry was not pursuant to lawful authority, the acquiescence of the householder was held an involuntary consent. In the context of a regulatory inspection system of business premises that is carefully limited in time, place, and scope, the legality of the search depends not on consent but on the authority of a valid statute.

We think a like result is required in the present case, which involves a similar inspection system aimed at federally licensed dealers in firearms. Federal regulation of the interstate traffic in firearms is not as deeply rooted in history as is governmental control of the liquor industry, but close scrutiny of this traffic is undeniably of central importance to federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders. See Congressional Findings and Declaration, Note preceding 18 U. S. C. § 922. Large interests are at stake, and inspection is a crucial part of the regulatory scheme, since it assures that weapons are distributed through regular channels and in

---

[4] Congress has made it a crime to violate any provision of the Gun Control Act. 18 U. S. C. § 924.

a traceable manner and makes possible the prevention of sales to undesirable customers and the detection of the origin of particular firearms.

It is also apparent that if the law is to be properly enforced and inspection made effective, inspections without warrant must be deemed reasonable official conduct under the Fourth Amendment. In *See* v. *City of Seattle,* 387 U. S. 541 (1967), the mission of the inspection system was to discover and correct violations of the building code, conditions that were relatively difficult to conceal or to correct in a short time. Periodic inspection sufficed, and inspection warrants could be required and privacy given a measure of protection with little if any threat to the effectiveness of the inspection system there at issue. We expressly refrained in that case from questioning a warrantless regulatory search such as that authorized by § 923 of the Gun Control Act. Here, if inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible.

It is also plain that inspections for compliance with the Gun Control Act pose only limited threats to the dealer's justifiable expectations of privacy. When a dealer chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection. Each licensee is annually furnished with a revised compilation of ordinances that describe his obligations and define the inspector's authority. 18 U. S. C. § 921 (a)(19). The dealer is not left to wonder about the purposes of the inspector or the limits of his task.

We have little difficulty in concluding that where, as here, regulatory inspections further urgent federal interest, and the possibilities of abuse and the threat to privacy are not of impressive dimensions, the inspection may proceed without a warrant where specifically authorized by statute. The seizure of respondent's sawed-off rifles was not unreasonable under the Fourth Amendment, and the judgment of the Court of Appeals is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

*So ordered.*

Mr. Justice Blackmun, concurring in the result.

Had I been a member of the Court when *Colonnade Catering Corp.* v. *United States,* 397 U. S. 72 (1970), was decided, I would have joined the respective dissenting opinions of Mr. Justice Black and of The Chief Justice, 397 U. S., at 79 and 77. I therefore concur in the result here.

Mr. Justice Douglas, dissenting.

As Mr. Justice Clark, writing for the three-judge panel in the Court of Appeals for the Tenth Circuit said, the Federal Gun Control Act, 18 U. S. C. § 923 (g), has a provision for inspection that is "almost identical" with the one in *Colonnade Catering Corp.* v. *United States,* 397 U. S. 72.

The present one provides:

> "The Secretary may enter during business hours the premises (including places of storage) of any firearms or ammunition . . . dealer . . . for the purpose of inspecting or examining (1) any records or documents required to be kept . . . and (2) any firearms or ammunition kept or stored by such . . . dealer . . . ." 18 U. S. C. § 923 (g).

The one in *Colonnade* provided:

> "The Secretary or his delegate may enter during business hours the premises . . . of any dealer for the purpose of inspecting or examining any records or other documents required to be kept . . . under this chapter . . . ." 26 U. S. C. § 5146 (b).

The Court legitimates this inspection scheme because of its belief that, had respondent been a dealer in liquor instead of firearms, such a search as was here undertaken would have been valid under the principles of *Colonnade*. I respectfully disagree. *Colonnade*, of course, rested heavily on the unique historical origins of governmental regulation of liquor. And the Court admits that similar regulation of the firearms traffic "is not as deeply rooted in history as is governmental control of the liquor industry." Yet, assuming, *arguendo*, that the firearms industry is as appropriate a subject of pervasive governmental inspection as is the liquor industry, the Court errs.

In *Colonnade*, we agreed that "Congress has broad power to design such powers of inspection under the liquor laws as it deems necessary to meet the evils at hand." 397 U. S., at 76. But we also said:

> "Where Congress has authorized inspection but made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." *Id.*, at 77.

Here, the statute authorizing inspection is virtually identical to the one we considered in *Colonnade*. The conclusion necessarily follows that Congress, as in *Colonnade*, has here "selected a standard that does not include forcible entries without a warrant." *Ibid.*

In my view, a search conducted over the objection of the owner of the premises sought to be searched is "forcible," whether or not violent means are used to effect

the search. In this case, the owner withdrew his objection upon being shown a copy of the statute authorizing inspection, saying: "If that is the law, I guess it is all right." If we apply the test of "consent" that we used in *Bumper* v. *North Carolina,* 391 U. S. 543, we would affirm this judgment,* for as MR. JUSTICE STEWART, speaking for the Court in *Bumper,* said:

> "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all.
>
> "When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion— albeit colorably lawful coercion. Where there is coercion there cannot be consent." *Id.,* at 548–550.

I would affirm the judgment below.

---

*The majority concludes that *Bumper* is "inapposite" to this case. *Bumper* holds that an *otherwise invalid* search is not legitimated because of the occupant's consent to a law enforcement officer's assertion of authority. *Bumper* is only "inapposite" if one has already concluded that consent is irrelevant to the validity of the search at issue.