**UNITED STATES of America,**
**Plaintiff,**

v.

**Jesus RIVERA–RIVAS, Defendant.**

**Crim. No. 74–150.**

United States District Court,
D. New Mexico.

June 26, 1974.

Victor R. Ortega, U. S. Atty., Albuquerque, N. M., for United States.

Jack L. Love, Federal Public Defender, Albuquerque, N. M., for defendant.

## MEMORANDUM OPINION

BRATTON, District Judge.

This matter comes before the Court for consideration upon the Motion of defendant Jesus Rivera-Rivas to suppress evidence discovered as the result of a regulatory search conducted by officials of the New Mexico Motor Transportation Department. The defendant is on trial upon an indictment charging him with illegal transportation of aliens into the United States. From the testimony received at the hearing on the motion, it was established that on May 4, 1974, Rivas was the driver of a U-Haul Rental Truck proceeding easterly on Interstate 10. Having crossed the Arizona-New

Mexico border, he reached the town of Lordsburg, New Mexico, some 27 miles further east, and in compliance with state road signs directing "all trucks" to stop at the Port of Entry for inspection, he proceeded off the Interstate into the vehicle inspection station.

According to the testimony of Inspector Arredondo, one of the vehicle inspectors on duty at the Port-of-Entry, the defendant stopped his vehicle and stepped out inquiring of the inspector whether his U-Haul was required to be weighed. Answering in the affirmative, Arredondo directed the Rivas vehicle onto the scales, but Rivas instead drove around and past the scales and had to be hailed to a stop by the inspectors and again directed to drive the truck onto the platform to be weighed.

The inspector then inquired of Rivas as to the nature of his cargo, and Rivas informed him that he was hauling his sister's furniture. Arredondo testified that the defendant appeared nervous and was acting suspiciously. Becoming suspicious himself, Arredondo verified the vehicle's weight with cargo as only 12,000 lbs., a weight he considered to be very low for a truck of this size hauling a load of furniture in light of his past experience on the job. The inspector thereupon walked to the back of the truck in order to verify the truck's contents, and upon opening the rear doors he saw in plain view 27 men lying face down, all of whom were subsequently found to be illegal aliens. He ordered them out of the truck and immediately called the office of the Border Patrol.

Rivas alleges that the action of the state officials in requiring his vehicle to be stopped, weighed, and his cargo inspected violated the Fourth Amendment's ban against unreasonable searches and seizures.

The Lordsburg Port-of-Entry is one of 19 such stations situated at various points along the state's borders as part of a comprehensive state regulatory scheme to determine if trucks are hauling cargo or passengers for hire, and if

so to ascertain if the vehicles have complied with numerous regulatory requirements. Foremost among these are the requirements that all such vehicles shall display permits from the State Corporation Commission ("SCC") entitling them to transport the particular cargo specified, that their cargoes be inspected to ascertain whether the contents being hauled comport with the specifications of the permit, and that the vehicles be weighed and determined to be within proper load limits. See New Mexico Statutes Annotated 1953, §§ 64–27–1 et seq.; 64–28–1 et seq., 64–29–1 et seq., and 64–30–8 et seq. Of particular relevance here are N.M.S.A.1953, §§ 64–27–43, 64–27–58, 64–30–8, 64–34–11, and 64–34–13, and SCC Revised General Order No. 32 (1967).

Inspector Arredondo testified that it was the practice of officials at the station to inspect the cargo of every non-New Mexico truck without a registration sticker from the SCC and to weigh all trucks regardless of whether they displayed the sticker. He further elaborated that in the course of their duties, the inspectors become familiar with certain commercial carriers and sometimes dispense with the cargo inspection requirement as to them. Having now set forth the facts surrounding the incident in question, the law to govern the case should now be discussed.

The defendant primarily contends that the initial weighing of the Rivas vehicle was illegal, not being authorized by state law, and that even if valid under state law, it constituted an unreasonable invasion of privacy under the Fourth Amendment. The United States opposes the motion by arguing the proposition that when an individual is engaged in an activity pervasively regulated by the government, he and his activities are subject to reasonable searches where necessary to further a valid regulatory interest.

In the recent case of United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) the court held that a gun dealer, pervasively regulated by the

federal government and doing business under a federal license, cannot constitutionally object to a reasonable regulatory search of his business premises to determine his compliance with federal laws despite the fact that he has not consented to the search and despite the fact that both a warrant and probable cause are absent. Upholding the seizure of certain illegal firearms, the court postulated, at 316, 92 S.Ct. at 1596: "When a dealer chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection." Again, at 317, 92 S.Ct. at 1597, the court declared: " * * * where, as here, regulatory inspections further urgent federal interests, and the possibilities of abuse and the threat to privacy are not of impressive dimensions, the inspection may proceed without a warrant where specifically authorized by statute." The statute authorizing the search in the case was a provision of the federal Gun Control Act.

The government urges *Biswell*'s applicability to the instant situation, arguing that the aforecited state statutes and regulations authorize the regulatory inspection undertaken here and that these particular inspections are necessary to the enforcement of the state's regulatory control of motor carriers for hire. However, because the individual searched in that case unquestionably was covered by the regulatory legislation and held a federal license, the case is somewhat different than the situation at hand and does not control the result here.

The vast network of state regulatory statutes governing cargo carrying vehicles are somewhat vague and ambiguous in scope as to the specific types of vehicles they purport to cover. However, whether or not the statutes authorize the detention and weighing of the Rivas vehicle, the inquiry, and subsequent search were reasonable under the circumstances. Since the weighing was a prop-

er act, the validity of the subsequent inspection follows naturally.

■■ Even if these statutes do not authorize this inspection as a matter of state law, they do not determine its validity as a matter of federal constitutional law. The propriety of a search affecting a federal court trial for an offense against the United States is governed by the language of the Fourth Amendment. See United States v. Scolnick, 392 F.2d 320, 325–326 (3rd Cir. 1968); United States v. Castillo, 449 F. 2d 1300 (5th Cir. 1971).

■ Judged against this Fourth Amendment standard, the weighing and the subsequent inspection of the defendant's vehicle were constitutionally reasonable as a matter of federal law under the circumstances. The detention of the Rivas vehicle for the purpose of weighing was a legitimate act which entailed only a de minimis intrusion into the defendant's privacy.

The state inspectors acted in complete good faith in the reasonable belief that they were acting in accordance with statutory directives in weighing the Rivas vehicle. Officer Arredondo testified that it had been the consistent practice of the Department for many years to require all trucks to be weighed. The regulatory purpose of the Motor Transportation Department in determining if heavy vehicles traversing the state's thoroughfares are within proper load requirements is one of great importance to the maintenance of the integrity of the state's highways. The brief weighing detention undertaken does not result in a search of either the vehicle or its driver and in light of the regulatory need for it, is valid under the Fourth Amendment.

The constitutional validity of the weighing can be further demonstrated by analogy to the so-called "driver's license cases." These cases hold that a brief detention of a motor vehicle by a law enforcement officer for the sole purpose of ascertaining whether the driver has a valid driver's license and the vehi-

cle driven a proper registration are constitutionally permissible despite the absence of either probable cause or reasonable suspicion to believe that the particular driver or vehicle is unlicensed or unregistered. Since in the absence of such inspections enforcement of these aspects of the motor vehicle laws would be rendered nugatory and since the brief detentions do not entail a substantial invasion of privacy, the courts have legitimized them as reasonable under the Fourth Amendment. See Lipton v. United States, 348 F.2d 591 (9th Cir. 1965); Myricks v. United States, 370 F.2d 901 (5th Cir. 1967); United States v. Croft, 429 F.2d 884 (10th Cir. 1970).

Supplementary authority for the same principle in a different context is United States v. Schafer, 461 F.2d 856 (9th Cir. 1972) where the court upheld the validity of inspections of the baggage of all airline passengers leaving Hawaii for the mainland to prevent the spread of plant diseases and damaging insects in the United States although no grounds existed to suspect any individual passenger, where it was deemed necessary to enforce the relevant federal laws. The same rationale applies here since proper enforcement of the state's weight limit laws requires every heavy truck to be weighed although even a reasonable suspicion does not exist. The Fourth Amendment is satisfied because a reasonable regulatory purpose is being furthered, the intrusion is necessary to further the regulatory purpose, and the invasion to privacy is minimal.

■ Having determined the validity of the weighing procedure, the validity of the search of the rear of the U-Haul follows naturally. At the moment Inspector Arredondo opened the rear doors of the truck, he had ample justification for satisfying himself as to the contents of the cargo. He had observed the defendant drive past the weight scales, had noticed that the defendant appeared nervous behind the wheel, knew from his past experiences that a load of furniture generally weighed considerably more than the 4000 lbs. of car-

go carried by the U-Haul, and also knew in light of his experience that U-Hauls had in the past been employed to illegally transport picture frames without permits. Whether the above chain of factual circumstances be characterized as demonstrating probable cause or the lesser criterion of reasonableness to continue the investigation, the opening of the rear doors was constitutionally permissible under the Fourth Amendment. Indeed, Inspector Arredondo would have been derelict in his duty had he not continued his investigation.

■ The caselaw discussing the administrative search doctrine has clearly set forth the principle that the validity of such searches are to be tested by the less rigorous requirement of reasonableness under the circumstances rather than that of traditional probable cause. See Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); United States v. Schafer, *supra*. The actions of the state officers were reasonable and the evidence discovered is therefore admissible.