## Commonwealth v. Split Vein Coal Co.

*Samuel C. Ranck,* District Attorney, and *Robert E. Yuhnke,* Assistant Attorney General, for Commonwealth.

*Elizabeth H. Kury,* of *Kury & Kury,* for defendant.

KIVKO, *P. J.,* December 31, 1974—Defendant in a prosecution for violating The Clean Streams Law filed an application for the suppression of evidence allegedly obtained through an illegal search and seizure.

The following facts have been stipulated by the parties: Defendant, Elwood Swank, trading as Split Vein Coal Company, owns and operates an anthracite coal breaker on leased premises in Ralpho Township. Water is obtained from the Shamokin Creek for the processing of the coal and, after passing through waste treatment facilities, is discharged through a pipe into Shamokin Creek. The creek is a tributary of the Susquehanna River. To discharge this waste water (effluent) into the creek, defendant obtained a permit from the Sanitary Water Board authorizing him to do so in ac-

cordance with the conditions relating to silt-laden waters attached to the permit, establishing standards for the operation of the treatment plant and the quality of waste waters discharged.

On August 14, 1973, Raymond D. Nuss, an agent of the Department of Environmental Resources, while standing on a highway bridge over the creek, observed the effluent as it was being discharged into the creek. He walked from the highway over the unenclosed premises of defendant to the discharge pipe, where he obtained several samples of the effluent approximately 15 feet from the edge of the stream. He did so without a search warrant and without receiving or requesting the specific permission or consent of defendant. On the basis of an analysis of the effluent, defendant was charged with violating The Clean Streams Law of June 22, 1937, P.L. 1987, as amended, 35 P.S. §691.1, et seq., the conditions of the permit and the rules and regulations adopted pursuant to The Clean Streams Law.

Defendant contends that the effluent, and any testimony in reference to it or to observations made by Mr. Nuss while on defendant's premises, are inadmissible as evidence under the Fourth Amendment to the United States Constitution forbidding illegal searches and seizures and should, therefore, be suppressed.

The Fourth Amendment provides that "(t)he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The objects and places specifically named in the amendment as entitled to such protection are areas where people have a right reasonably to expect that their privacy will be respected. This right

has been extended to portions of commercial premises which are not open to the public. See v. Seattle, 387 U.S. 541, 87 S. Ct. 1737, 18 L. Ed. 2d 943 (1967).

To claim the protection of the Fourth Amendment, one must have a reasonable expectation that one's activity or conduct occurs in a private area. However, a person may have control over places that are not private and access to which has not been restricted. The protection of the Fourth Amendment is not extended to such areas, the privacy of which has already been compromised by the allowance of public intrusion. The crux of the determination of the applicability of the amendment is whether a person realizes that the area may not be totally private. An "open field" traditionally has not been considered a protected area: Katz v. U.S., 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). Evidence discovered on "open fields" has been admissible, though seized without a warrant.

The "open fields" doctrine was enunciated in Hester v. United States, 265 U.S. 57, 44 S. Ct. 445, 68 L.Ed. 898 (1924). There, two revenue agents concealed themselves upon defendant's land to observe an expected sale of illegal whiskey. When they interrupted the sale, defendant dropped a bottle, the contents of which was later used as evidence. Defendant moved to suppress the evidence on the ground that the entry on the land without a warrant constituted a trespass and the evidence was therefore illegally seized. The court found that the trespass on defendant's land was immaterial, for "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the

open fields. The distinction between the latter and the house is as old as the common law. 4 Bl. Comm. 223, 225, 226." 265 U.S., at 59.

The expansion of the Fourth Amendment protection to business enterprises by See v. Seattle, supra, has not been extended to "open fields," even where the search constitutes a technical trespass: U.S. v. Cain, 454 F.2d 1285 (7th Cir., 1972).

Citing the Hester case, the United States Supreme Court unanimously upheld a warrantless search under circumstances strikingly similar to the case at bar as recently as May 1974 in Air Pollution Variance Board of the State of Colorado v. Western Alfalfa Corporation, 416 U.S. 861, 94 S. Ct., 40 L. Ed. 2d 607 (1974). In this case, an inspector from the Colorado Department of Health saw plumes of smoke being emitted from respondent corporation's chimneys. He entered the yard of the corporation in daylight without corporation's knowledge or consent and made certain readings or tests of the smoke. The results of the tests he took that day were admitted as evidence at a hearing before the Air Pollution Variance Board and, on the basis of those tests, the board entered a cease and desist order. In upholding the order, the United States Supreme Court stated: . . . "the inspector entered no part of respondent's plant to make the inspection. . . . We adhere to Camara and See, but we think they are not applicable here. The field inspector did not enter the plant or offices. . . . The court [has] . . . refused to extend the Fourth Amendment to sights seen in 'the open fields'. The field inspector was on respondent's property but, we are not advised that he was on premises from which the public was excluded. . . . [The inspector] is well within

the 'open fields' exception to the Fourth Amendment approved in Hester." 416 U.S., at 863-65.

Under the facts stipulated in the matter before us, the land entered by Mr. Nuss was not within an area where defendant might reasonably have expected his conduct to be free from intrusion. Defendant was aware of the open nature of the property; the land bordering on the stream was easily accessible to hikers or others who might naturally be expected to walk where there are no physical barriers, even if in doing so they were committing a technical trespass. The facts do not indicate that defendant had any reason to expect privacy in these open fields.

The creek-side location of the discharge pipe brings it within the "open fields" doctrine. The Fourth Amendment, therefore, does not reach the type of search conducted by Mr. Nuss and offers no valid grounds for the suppression of the evidence obtained.

The Commonwealth contends that the evidence is admissible on two additional grounds: (1) the inspection was conducted pursuant to authority granted in The Clean Streams Law and in the Administrative Code of April 9, 1929, P.L. 177, as amended, 71 P.S. §§510-1, et seq., as a necessary part of a regulatory program and, under the rule developed in U.S. v. Biswell, 406 U.S. 311, 92 S. Ct. 1593, 32 L. Ed. 2d 87 (1972), is reasonable per se without the need for a warrant and an independent determination of probable cause; (2) the search was conducted on probable cause and comes under the "exigent circumstances" rule, because the evidence could have been easily and quickly removed or destroyed.

In view of our holding on the basis of the "open

fields" rule, we find it unnecessary to consider these additional reasons advanced by the Commonwealth.

We, therefore, enter the following

## ORDER

And now, December 31, 1974, defendant's application for suppression of evidence is dismissed.