CINCINNATI BOARD OF REALTORS, INC., ET AL.; WILSON, APPELLEE, *v.* CITY OF CINCINNATI, APPELLANT.█

[Cite as Cincinnati Bd. of Realtors v. Cincinnati (1975), 47 Ohio App. 2d 267.]

(No. C-74354—Decided June 9, 1975.)

*Messrs. Frost & Jacobs* and *Mr. R. O. Klausmeyer,* for appellee.

*Mr. Thomas A. Luebbers* and *Mr. Ely M. T. Ryder,* for appellant.

KEEFE, J. This cause came on to be heard upon the appeal; the transcript of the docket, the journal entries and the original papers from the Hamilton County Court of Common Pleas; and the assignments of error, briefs and oral arguments of counsel.

The Cincinnati Board of Realtors, Inc., and Chester J. Wilson, brought this action in the Court of Common Pleas seeking a judgment declaring two ordinances enacted by the Cincinnati City Council, on December 28, 1973, unconstitutional and for additional appropriate injunctive relief. Subsequently, by a stipulation of the parties and by order of court, plaintiff Vivian E. Wilson was added as a party

plaintiff. The ordinances require persons selling real property intended for residential use to have their buildings inspected by city inspectors before entering into any contracts for the sale of such property.' They were to take effect on

[1]Cincinnati Ordinance No. 556-1973 reads:

"Modifying the provisions of Chapter CC-3 of the Cincinnati-Ohio Building Code by ordaining supplementary Section CC-3-47.03, Certificate of Housing Inspection.

Whereas, the city of Cincinnati desires to preserve quality in its housing inventory; and

Whereas, in most of the city, existing housing is only inspected on a complaint basis; and

Whereas, the city of Cincinnati desires to protect its citizens from housing which is a threat to their health and safety; and

Whereas, the city of Cincinnati desires to provide more effective information to prospective housing purchasers; now, therefore,

Be It Ordained by the council of the city of Cincinnati, state of Ohio:

Section 1. That Chapter CC-3 of the Cincinnati-Ohio Building Code is hereby modified by the ordination of supplementary Section CC-3-47.03 to read as follows:

Sec. CC-3-47.03. Certificate of Housing Inspection.

(A) Every owner of improved real property intended for use as residential housing, prior to entering into a contract for the sale of that property, shall tender to the prospective buyer and obtain from the prospective buyer his signed acknowledgment of the receipt of a copy of a Certificate of Housing Inspection, issued by the Director of Buildings and Inspections on the subject property within 180 days of the entering into the contract for sale.

(B) Certificate of Housing Inspection is not required:

(1) For the period beginning with the effective date of this Ordinance and ending one year thereafter, on any transfer of improved real property which is intended for use as housing by more than one family.

(2) On any transfer exempted by division (F) (3) of Section 319.54 of the Revised Code from any fee imposed by Section 319.202 of the Revised Code.

(3) When the structures upon the realty have been subjected to an inspection for a Certificate of Occupancy pursuant to Section CC-3-47.62 COBC and when the seller tenders a copy of that Certificate of Occupancy, issued within 180 days of the date of tender, to the buyer and obtains from the buyer his signed acknowledgment of its receipt.

(4) When the Director of Buildings and Inspections has failed to issue the Certificate of Housing Inspection within fourteen (14) days after gaining access to all structures upon the realty.

June 28, 1974. Both the plaintiffs and defendant filed a motion for summary judgment with affidavits attached. On June 10, 1974, the trial court dismissed plaintiffs Cincinnati Board of Realtors, Inc., and Chester J. Wilson and

(C) The Director of Buildings and Inspections shall issue a Certificate of Housing Inspection within fourteen (14) days after gaining access to all structures upon the realty and when:

(1) The owner or his authorized agent applies in writing to the director, agrees to a time during the working hours of the Department of Building and Inspections during which the subject property will be available for inspection, and pays to the City Treasurer the following fees:

(a) For one family dwelling: $35.00.

(b) For buildings containing more than one dwelling unit: $35.00 plus $5.00 for each additional dwelling unit with a maximum of $100.00 for any structure .

(2) The Director of Buildings and Inspections has inspected the portion of the subject property used for residential purposes and noted any deficiencies found on the inspection which are in violation of Chapter CC-77 of the Cincinnati-Ohio Building Code and the Cincinnati Zoning Code pertaining to use and occupancy.

(D) In every sale of realty to which this section applies, the seller shall warrant that the structure is in substantial compliance with Chapter CC-77 of the Cincinnati-Ohio Building Code and the provisions of the Cincinnati Zoning Code pertaining to use and occupancy at the time of the contract for sale, except where the seller has obtained and presented to the buyer a Certificate of Housing Inspection or where the buyer has actual knowledge of the deficiencies in the structure at the time of the contract for sale. The buyer shall be presumed not to have knowledge of any deficiencies unless:

(1) The buyer signs a written statement which specifically notes each deficiency; or

(2) The buyer derives a substantial portion of his income from the business of real estate operations or is otherwise actively engaged in the business of real estate operations.

Any action to enforce the provisions of the warranty imposed by this section shall be brought within two years of the time of the entering into the contract for sale.

(E) Except in a case of immediate danger to the public health or safety, orders for the correction of code violations found on an inspection conducted for the purpose of the issuance of a Certificate of Housing Inspection shall not be served upon the applicant for the certificate within 180 days of first issuance.

(F) Any person, being the owner or agent of improved realty subject to the provisions of this section, who fails to tender a Certifi-

neither has appealed. On the same date, the trial court found these ordinances unconstitutional and invalid, enjoined the city from taking any action pursuant to the terms and provisions of said ordinances, and entered a judgment for the remaining plaintiff, Vivian E. Wilson. The city of Cincinnati appealed.

In this decision the defendant will generally be referred to as the city, and Vivian E. Wilson customarily identified as appellee. The city urges this court to reverse the decision below granting the plaintiff's motion for summary judgment, requests that we enter a summary judgment for the city, and asks that we also remove the injunction prohibiting the city from enforcing the provisions of the so-called Certificate of Housing Inspection Ordinances. In connection therewith, the city urges nine assignments of error which will be evaluated as indicated.

It is believed that the first and third assignments of error raise issues so co-related that good order and clarity require their consideration together. The first reads as follows:

"The trial court erred by ruling that the city may not make failure to deliver a certificate of housing inspection a misdemeanor, ignoring the city's police power to protect its citizens' financial safety and its power to directly enforce the Cincinnati Housing Code by requiring access for the city's Housing Inspectors."

cate of Housing Inspection to a prospective buyer in accordance with the provisions of this section shall be subject to penalty as provided in Section CC-3-64 COBC. The absence of deficiences in the subject property or the buyer's actual knowledge of any deficiencies shall not be a defense to the failure to tender a Certificate of Housing Inspection.

(G) The Director of Buildings and Inspections is authorized and directed to promulgate such forms, rules, and regulations as are necessary for the efficient administration of this section.

Section 2. The provisions of Section 1 of this ordinance shall take effect and be in force from and after six months after the date of the passage of this ordinance.

Passed *December 28 A. D., 1973*

Ordinance No. 557-1973 is exclusively a penalty enactment providing for a fine of not less than $5.00 and not more than $500.00 for a violation of Section (F) of No. 556-1973."

The third states:

"The trial court erred by ruling that the inspection by appointment of real property placed upon the real estate market is an unreasouable search."

The first assignment of error raises the question whether the city, pursuant to the police power, granted it by Section 3, Article XVIII of the Ohio Constitution, can legally pass ordinances with the criminal sanctions penalizing a citizen for failing to deliver a certificate of housing inspection to a prospective buyer.

The extent of Cincinnati's police power in this regard seems aptly described in *Village of West Jefferson* v. *Robinson* (1965), 1 Ohio St. 2d 113, 119.

"Police regulations, whether by ordinance or statute, will frequently interfere with the enjoyment and use of property and with the making of contracts. However, this court has consistently held that a police regulation having that effect may be valid unless it clearly appears that such regulation bears no real and substantial relation to the public health, safety, morals or general welfare of the public or is unreasonable or arbitrary."

The trial court was unconvinced that the ordinances bear a real and substantial relationship to the health, safety, morals or general welfare of the public. We are inclined to the conclusion that the ordinances on their face do, in fact, bear an adequate relationship to the health, safety, morals and general welfare of the public to justify their validity. The city has the authority, under its police powers, to enact legislation of this class. See *Holsman* v. *Thomas* (1925), 112 Ohio St. 397. The preamble to No. 556-1973 validly and convincingly demonstrates that the ordinances come within the purview of permissible municipal legislation under the city's police power.

The comprehension of the initial assignment of error is such that we are obliged at this juncture to consider the legal significance of the criminal sanctions contained in paragraph (F) of No. 556-1973. Although, we believe that the city possesses power to enact an ordinance dealing with the subject matter contained in No. 556-1973, the in-

clusion of the criminal features in paragraph (F) thereof, hereinafter evaluated in our consideration of the third assignment of error, compels us to overrule the first assignment of error.

The third assignment of error raises the issue of whether the trial court was correct in ruling that a warrantless inspection of premises, during an appointment made by the owner of residential property placed upon the real estate market, is an unreasonable search. In connection with this problem, the trial court came to the following conclusion:

"Since the failure to obtain and tender a Certificate of Housing Inspection will subject the owner to criminal penalties, these ordinances will force the owner to permit officials to enter and inspect their premises, without warrants, but with criminal jeopardy by reason of the other penalties for housing violations."

Although the subject ordinances provide that the owner of a residence is to arrange for the inspection and need not seek inspection unless he is going to sell his home or other residential property, the so-called "consent" cannot justify the warrantless search. It is not a true consent but one imposed by law, the alternative to which is a conviction for a misdemeanor. The fact that one cannot legally sell his home without first allowing the inspection coerces him into foregoing the constitutional rights granted him by the Fourth Amendment to the United States Constitution. Coercion, either express or implied, negates consent. Here, the ordinances confront the owner of residential property with a dilemma. He must consent to a warrantless search or be subjects himself to criminal prosecution with a possible conviction, a fine and criminal record. We conclude that the warrantless search necessarily resulting from the enforcement of these ordinances is unconstitutional under the Fourth Amendment of the United States Constitution, and as applied to the states through the due process clause of the Fourteenth Amendment.

With respect to this facet of the appeal reflected in assignment three, our attention has been particularly directed to four decisions of the United States Supreme Court.

We believe the trial court was correct in ruling that the case before us is controlled by the Supreme Court's holdings in *Camara* v. *Municipal Court* (1967), 387 U. S. 523, and *See* v. *Seattle* (1967), 387 U. S. 541.

In deciding *Camara,* in 1967, the Supreme Court cited *Frank* v. *Maryland,* 359 U. S. 360 and *Eaton* v. *Price,* 364 U. S. 263. Both involve state court convictions of home owners who refused to permit inspectors to enter and inspect their premises without search warrants. Both were decided by a five to four vote.

It is asserted in *Camara* at page 525:

"Since those closely divided decisions, more intensive efforts at all levels of government to contain and eliminate urban blight have led to increasing use of such inspection techniques, while numerous decisions of this Court have more fully defined the Fourth Amendment's effect on state and municipal action. *E. g., Mapp* v. *Ohio,* 367 U. S. 643; *Ker* v. *California,* 374 U. S. 23. In view of the growing nationwide importance of the problem, we noted probable jurisdiction in this case and in *See* v. *City of Seattle, post,* p. 541, to re-examine whether administrative inspection programs, as presently authorized and conducted, violate Fourth Amendment rights as those rights are enforced against the States through the Fourteenth Amendment. 385 U. S. 808."

*Camara* involved a litigant who originally brought his action in a California Superior Court, alleging that he was awaiting trial on a criminal charge of violating the San Francisco Housing Code by refusing to permit a warrantless inspection of his residence. He sought a writ of prohibition, contending that the ordinance authorizing such inspections was unconstitutional on its face. Eventually, the federal constitutional questions were presented to the United States Supreme Court.

In *Camara,* it is asserted:

"As the court explained in *Johnson* v. *United States,* 333 U. S. 10, 14: 'The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of

privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent. ' " *Id.* at 529.

Later in *Camara,* it is stated:

"And even accepting *Frank's* rather remarkable premise, inspections of the kind we are here considering do in fact jeopardize 'self protection' interests of the property owner. Like most regulatory laws, fire, health, and housing codes are enforced by criminal processes. In some cities, discovery of a violation by the inspector leads to a criminal complaint. Even in cities where discovery of a violation produces only an administrative compliance order, refusal to comply is a criminal offense, and the fact of compliance is verified by a second inspection, again without a warrant. Finally, as this case demonstrates, refusal to permit an inspection is itself a crime * * *." *Id.* at 531.

The Supreme Court concluded that the California citizen had a constitutional right to insist that the inspectors obtain a warrant to search. We find that the facts in *Camara* and the factual pattern in the case before us are so similar that *Camara* is apposite.

In *See,* the appellant sought a reversal of his conviction for refusing to permit a representative of the department of the city of Seattle to enter and inspect appellant's locked commercial warehouse without a warrant and without probable cause to believe that a violation of a municipal ordinance existed therein. The court held that the only question presented in *See* was whether *Camara* applied to inspections of commercial structures which are not used as private residences. The Supreme Court reversed the conviction and concluded, at page 546:

"We hold only that the basic component of a reasonable search under the Fourth Amendment—that it not be enforced without a suitable warrant procedure—is applicable in this context, as in others, to business as well as to residential premises. Therefore, appellant may not be prosecuted for exercising his constitutional right to insist that the fire inspector obtain a warrant authorizing entry upon appellant's locked warehouse."

We rely upon *See* as both relevant and controlling. We have also carefully examined *United States* v. *Biswell* (1972), 406 U. S. 311, and *Wyman* v. *James* (1971), 400 U. S. 309. The factual situation in *Biswell* involves a warrantless search of a locked storeroom as part of inspection procedure authorized by the Federal Gun Control Act of 1968. *Wyman* dealt with visits by case workers in a New York aid to families with dependent children program. These visits were designed to determine if the welfare funds were being properly spent. We consider that the factual patterns both in *Biswell* and *Wyman* raise issues significantly different from those in the case at bar. Vis-a-vis *Biswell,* the Supreme Court has recently recognized that it only applied to "commercial enterprises engaged in businesses closely regulated and licensed by the Government." *Almeida-Sanchez* v. *United States* (1973), 413 U. S. 266, 270, 271. *Biswell* does not support a warrantless search of personal residences. In *Wyman,* there were no criminal penalties for a refusal to allow the search contrary to the potential which exists in the factual pattern of the case at bar.

The city's requirements for securing a certificate of housing inspection contained in paragraphs (A), (B) and (C) of Section 1 of Ordinance 556-1973 present facially no constitutional obstacles for this court. The insurmountable infirmity which we perceive in the enactment is contained in paragraph (F) because it imposes a criminal penalty upon an owner-seller of residential property if he does not agree to a warrantless search of his real property which constitutionally he is completely free to refuse.

The third assignment of error is without merit.

We next consider the second assignment of error, which follows:

"The trial court erred by ruling that the city may not impose strict criminal liability for failure to obtain and tender a Certificate of Housing Inspection."

We perceive a measure of ambiguity in this assignment of error. The first blush examination of the city's argument in support of this claim seems to indicate that the trial court challenged the authority of the city to pass ordinances

imposing strict criminal liability. Our evaluation of the trial court's holding leads us to no such conclusion. The trial court seemed not to question the city's authority to pass ordinances imposing strict criminal liability, but decided that the city, in attempting to impose strict criminal liability for the nonproduction of a Certificate of Housing Inspection acted arbitrarily and unreasonably. Arbitrariness and a lack of reasonableness are relative concepts and we cannot agree with the trial court in its conclusion that the city's imposition of strict criminal liability for a failure to tender a Certificate of Housing Inspection is arbitrary and unreasonable. Our recollection of the comprehension of the word arbitrary has been refreshed by an examination of Black's Law Dictionary (rev. 4th ed.).[2]

It is consistent with the common experience of those who buy and sell residential property to consider such transactions as matters of grave importance. There are many legal obligations which inhere in such business negotiations. Any seller of realty should reasonably be held to ascertain obligations which he assumes under city ordinances with respect to the general condition of the property of which he is about to dispose.

The second assignment of error as construed herein is well taken.

The fourth assignment of error alleges:

"The trial court erred by ruling that paragraph (F) of the Certificate of Housing Inspection Ordinance is vague, indefinite and fails to give reasonable notice of the requirements of the ordinance."

Although we have previously held in our ruling under the third assignment of error that the criminal sanctions of paragraph (F) are constitutionally infirm in requiring an

---

[2]"Arbitrary. Means in an 'arbitrary' manner, as fixed or done capriciously or at pleasure; without adequate determining principle; not founded in the nature of things; nonrational; not done or acting according to reason or judgment; depending on the will alone; absolutely in power; capriciously; tyrannical; despotic * * *. Without fair, solid, and substantial cause; that is, without cause based upon the law * * * not governed by any fixed rules or standard."

unreasonable search, we are required under Appellate Rule 12(A) to deal with this assignment of error which raises a more limited question as to paragraph (F). Obviously, if we are correct in the former, the latter inquiry becomes redundant. Nevertheless, we must address ourselves to the question whether (F) is too vague and indefinite to satisfy constitutional standards.

Thus, we have examined the doubts which the trial court expresses in its opinion to attempt to substantiate its holding that the first sentence of paragraph (F) is "to vague, indefinite and uncertain to pass the test of constitutionality." We conclude that the trial court has borrowed doubts about the meaning of this language and conclude that this portion of the ordinance is adequately descriptive and that any reasonable person can understand its meaning. To demand such absolute lucidity in a legislative enactment as will never be questioned is to attempt to establish an extremely harsh and unrealistic rule. Whatever ambiguity might be argued to exist to paragraph (F) is inconsequential and unsubstantial. We uphold the fourth assignment of error.

We pass next to a determination of the merits of the fifth assignment of error which reads:

"The trial court erred by ruling that the city does not have the power to eliminate certain defenses to a charge of failure to deliver a Certificate of House Inspection, which defenses if allowed would prevent the city from effectively enforcing the Certificate of Housing Inspection Ordinance."

In support of the position that the trial court ruled correctly that the city does not have the power to eliminate the defenses which are contained in the second sentence of paragraph (F) of Ordinance 556-1973, appellee urges for our consideration the case of *Dragelevich* v. *City of Youngstown* (1964), 176 Ohio St. 23. Although included in the appellee's arsenal of arguments offered to validate the trial court's ruling with respect to these two defenses, we conclude that *Dragelevich* is relevant and apt authority in support of the city's contention that the trial court committed error by ruling that the city lacks the power to eliminate

those defenses which it seeks to do in the second sentence of paragraph (F).³

The brief of the *appellee* strongly emphasizes what the Supreme Court asserted in *Dragelevich*:

"*Froelich* v. *City of Cleveland*, 99 Ohio St., 376, has the following to say in the third paragraph of the syllabus:

" 'The state and municipalities may make all reasonable, necessary and appropriate provisions to promote the health, morals, peace and welfare of the community. But neither the state nor a municipality may adopt any regulations which are unreasonable. The means adopted must be suitable to the end in view, must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation.' *Id.* at p. 30.''

We cite *Dragelevich* because it is a reaffirmation by the Supreme Court in 1964 of its earlier opinion in *Froelich* in 1919.

Our evaluation of the elimination of the two possible defenses in the second sentence of paragraph (F) is that such elimination bears a direct and necessary relationship to the obvious purpose for the enactment of the ordinance. The ready availability of the defenses which the ordinance eliminates manifestly would create insurmountable difficulty in its enforcement. Among other infirmities which are inherent in the availability of the "absence of deficiencies" defense is bound to be the confusion resulting from the city's and property owner's respective evaluations of whether or not discrepancies exist. It seems to us that to allow the property owner to make the ultimate determination on this subject would invest him with a sophistication which he is not likely to possess and an authority which he ought not to possess. To countenance an "absence of deficiency" defense impresses us as being akin to allowing as

---

³The second sentence of paragraph (F) provides: "The absence of deficiencies in the subject property or the buyer's actual knowledge of any deficiencies shall not be a defense to the failure to tender a Certificate of Housing Inspection."

a defense to a motorist charged with driving against a red traffic light his assertion that there was no other traffic in the vicinity.

So far as the defense of the buyer's actual knowledge of any deficiency is concerned, the enforcement of No. 556-1973 would be hamstrung if the city had the legal obligation to prove the buyer's subjective state of mind with respect to what he does or does not know about the existence of deficiencies. The ordinance has two stated purposes. One is the conservation of the existing stock of housing and the elimination of substandard housing in Cincinnati. The other is a consumer protection concept. The buyer's actual knowledge of any deficiency would not conflict with the consumer protection rationale. However, permitting a buyer's actual knowledge to constitute a viable defense would be inconsistent with the ordinance's other indicated purpose. A buyer's knowledge of deficiencies may be valuable information for him in making a purchase of a particular residence, but such information serves no purpose in eliminating substandard housing or remedying existing deficiencies about which the new owner may do absolutely nothing.

In the area covered by the fifth assignment of error, we find ourselves unable to agree with the trial court. It follows that this assignment must be sustained.

A joint determination of the merits of the sixth and seventh assignments of error is indicated. The sixth reads:

"The trial court erred by ruling that the warranty implied by the ordinance on failure to tender a certificate of housing inspection is vague, indefinite, and fails to reasonably promote the ends of the ordinance."

The seventh states:

"The trial court erred by ruling that the presumption implied by the ordinance is unreasonable, arbitrary and unconstitutional."

In carefully examining paragraph (D) of ordinance No. 556-1973, our reaction parallels that expressed by the city in its brief admitting that "perhaps this section of the ordinance could have been more artfully drafted." The trial court ruled that the warranty established by paragraph

(D) of the ordinance upon the failure of the seller to tender a certificate of housing inspection is too vague, indefinite and confusing to be a valid enactment. As indicated, we believe paragraph (D) to be no perfect exemplar of lucidity. However, believing that the creation of such a warranty is within the authority of a home rule city and affording the enactment the presumption of regularity to which the city is entitled in consideration of its legislative acts, we find that whatever impreciseness exists in paragraph (D) is not so substantial as to amount to a constitutional deprivation of due process. We construe the warranty contained in (D) to be an *implied* warranty analogous to that created in R. C. 1302.27. We conclude therefore that the sixth assignment of error is a valid one.

Both the city and the appellee devote considerable attention to that portion of paragraph (D) which provides:

"The buyer shall be *presumed* not to have knowledge of any deficiencies unless: (1) The buyer signs a written statement which specifically notes each deficiency; or (2) The buyer derives a substantial portion of his income from the business of real estate operations or is otherwise actively engaged in the business of real estate operations." (Emphasis added.)

That an ambiguity exists as to the nature of the presumption—whether it be rebuttable or conclusive—cannot be gainsaid. However, a resolution of this perplexity seems not to be required in view of the holding which we are convinced we must make that the entire presumption in paragraph (D) must fail. Exception (1) of the presumption (also referred to as the first half of the presumption) is arbitrary, unreasonable and unconstitutional. This exception creates a presumption which in no way follows from known fact. It ignores the nature of an ordinary real estate transaction where the parties inevitably confer and the buyer generally observes and inspects. The first exception of the presumption lacks logic, is contrary to reason and is arbitrary.

The establishment of the second half of the presumption, proof that the buyer is a real estate operator, leading

to the presumption of the buyer's actual knowledge of specific deficiencies in a particular piece of property, ignores the reality of the situation and challenges logic. It is unreasonable and arbitrary to presume that a buyer, simply because he is in the real estate business, will have knowledge of defects which normally are discernible only upon actual physical inspection.

Without declaring the warranty provision of paragraph (D) invalid, we sever the presumption portion presently contained in the ordinance. We consider that the indicated severance does not invalidate the implied warranty created in paragraph (D). The seventh assignment is overruled.

In the eighth assignment of error, the city contends:

"The trial court erred by ruling that a home rule city does not have the power to prescribe a reasonable limitation upon any right of action which it may create."

This assignment of error presents little difficulty for disposition. Ordinance No. 556-1973, imposing a two year period of limitation upon the bringing of any action to enforce the provisions of the implied warranty contained in paragraph (D), conflicts with the policy of uniform statewide periods of limitation designed to give consistent justice throughout the state, contained in R. C. Chapter 2305. Consequently, the separate time limitation which the ordinance attempts to create is invalid and must be severed from the remainder of the ordinance. The eighth assignment of error is not well taken.

In the ninth assignment of error it is contended that:

"The trial court erred by granting the plaintiff-appellee's motion for summary judgment."

As the city admits in its brief, the validity of this assignment necessarily depends upon this court's rulings upon the other assignments of error. Obviously, it is a catch-all postulation of error allegedly committed at the trial level. In view of our holding that certain assignments of error do contain merit, the ninth assignment must be sustained.

As authorized by Appellate Rule 12(B), we proceed to affirm in part and reverse in part the final order of the trial court and render the judgment which the court below

should have rendered. The summary judgment granted by the trial court is, therefore, modified. Ordinance No. 556-1973 is a valid and constitutional enactment *except in the following respects*: (1) paragraph (F) thereof is found to be unconstitutional in its entirety as is the associated criminal penalty Ordinance No. 557-1973; (2) That portion of paragraph (D) Ordinance No. 556-1973—the second sentence thereof—which imposes a presumption with two exceptions in connection with the implied warranty, is found to be arbitary, unreasonable and invalid and is severed from such paragraph; and (3) the special two year limitation of action established by Ordinance No. 556-1973 (third sentence of paragraph [D]) is found to be in conflict with state law and declared invalid. We remove the injunction against the city from enforcing those provisions of Ordinance No. 556-1973 which herein we declare to be legally sound. In respect to the foregoing three categories which we determine to be invalid, the injunction ordered by the trial court continues in full force and effect.

It is realized that this decision substantially modifies Ordinance 556-1973 and invalidates Ordinance 557-1973 in toto. We do not conceive that Ordinance 556-1973 thus becomes inoperable. However, we are not blind to the fact that the city may desire to review the subject ordinance as circumscribed by this decision to determine whether redrafting is desirable. The ultimate decision of whether to redraft the ordinance is, of course, the city's.

*Judgment affirmed in part and reversed in part.*

SHANNON, P. J., and PALMER, J., concur.