[Crim. No. 41298. Second Dist., Div. Four. July. 22, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
ROOSEVELT OWENS, Defendant and Appellant.

**COUNSEL**

William A. Leeds for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Otis D. Wright, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KINGSLEY, Acting P. J.**—Defendant was charged with possession for sale of a controlled substance, in violation of section 11378 of the Health and Safety Code. After his motion to suppress, made under sec-

tion 1538.5 of the Penal Code, was denied he pled guilty and was granted probation. He has appealed.

 The sole issue in the case at bench is the validity of an "airport search" of defendant's checked luggage. We conclude that the search was constitutionally valid.

At about 7 p.m., defendant purchased a ticket for a flight from Los Angeles to Dallas-Fort Worth and checked luggage to accompany him on that flight. Suspicious that he might be a potential hijacker, an airline employee caused the checked baggage to be X-rayed. The X-ray disclosed suspicious objects. The airline employees opened the bag and discovered several bottles of pills which ultimately were determined to contain the controlled substance herein involved.

The contentions here made are: (1) That the inspection and search were mandated by federal regulations, so that the airline employees were acting as government agents subject to the Fourth Amendment; and (2) that a warrantless search of the luggage required a warrant.

We agree with defendant that the custody here was that of governmental agents. The People argue that the case on which defendant relies, *United States* v. *Davis* (9th Cir. 1973) 482 F.2d 893, does not here apply, because *Davis* dealt only with a search of the passenger and his carry-on luggage. However, contrary to the People's contention, at the time herein involved, the federal regulations mandatorily required the institution and use of a security system applicable not only to the search of the passenger and his carry-on luggage, but to items to be checked. Title 14 Code of Federal Regulations subdivision (b) of section 121.538 of the applicable regulation promulgated by the federal aviation authority, expressly required the inspection herein involved. That provision reads: "(b) Each certificate holder shall adopt and put into use a screening system, acceptable to the Administrator, that is designed to prevent or deter the carriage aboard its aircraft of any explosive or incendiary device or weapon in carry-on baggage or on or about the persons of passengers, except as provided in § 121.585, *and the carriage of any explosive or incendiary device in checked baggage.* Each certificate holder shall adopt and put into use its security program prescribed in paragraph (c) of this section." (Italics added.)

However, it is not every governmental search that requires observance of the warrant requirement of the Fourth Amendment. It

has long been recognized that so-called "Administrative" searches, not directed at securing evidence of a criminal violation by a particular individual, may be proper where they are designed to insure general public security. (*United States* v. *Biswell* (1972) 406 U.S. 311 [32 L.Ed.2d 87, 92 S.Ct. 1593]; *Camara* v. *Municipal Court* (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727]; *See* v. *City of Seattle* (1967) 387 U.S. 541 [18 L.Ed.2d 943, 87 S.Ct. 1737].) In such cases, the validity of a search depends on a balancing of the personal interest in privacy (expressly protected in California by section 1, of article I of the state Constitution) against the gravity of the public danger sought to be prevented. At first, airport searches were designed to prevent so-called hijacking—i.e., conduct whereby an individual by threats of gunfire or explosive, sought to take over an airplane in flight and divert or detain it for some political or personal gain. However, it soon became obvious that a similar, and even greater, danger existed where a person, by placing explosives, or other dangerous material in the baggage compartment could sabotage the airplane, causing its destruction with loss of life to its passengers and crew. ▮ The regulation before us is designed to prevent such a result. The search mandated by the regulation here involved imposes a minimal invasion of privacy; the checked baggage of an ordinary passenger will not contain, and an X-ray check will not show, the kind of material or device envisaged by the regulation. However, the risk of loss of both property and life from the checking of explosive and similar destructive material is great. We cannot say that the kind of investigation herein involved was not permissible.

It is, of course, not contended that the accidental discovery of illegally possessed objects in the course of a valid administrative search is illegal or that its use, thus accidentally discovered, in a criminal prosecution is illegal.

The judgment is affirmed.

McClosky, J., and Berg, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.