OPINION OF THE COURT
William Miller, J.
The defendant, Dean L. Baker, has moved for an order suppressing evidence that he was transporting flammable materials through the streets and highways of New York City between the hours of 4:00 p.m. and 6:00 p.m. in violation of regulations promulgated under section Cl 9-52.0 of the Administrative Code of the City of New York. The facts are not in dispute. They are as follows:
On October 28, 1982, at approximately 6:15 p.m., Ronald Kanterman, a New York City Fire Department Inspector, along with Police Officer Rice of the New York City Police Department, Highway Sub-Unit No. 2, were assigned to survey the easterly side of the eastbound toll plaza of the *637 Verrazano-Narrows Bridge. Another fire department inspector, Edward J. Lynn, Jr., was stationed at the westerly side of the toll plaza. The three officers were on an assignment requiring them to stop for inspection vehicles allegedly carrying hazardous cargoes which did not bear proper New York City Fire Department permits and plates.
At the above time and place Inspector Lynn informed Inspector Kanterman by “walkie-talkie” that he had observed a tank truck approaching the toll plaza which had the United States Department of Transportation placard located on the side of the truck indicating that it was transporting hazardous materials but had not observed a New York City Fire Department plate. Such a permit plate is required when the transportation of hazardous materials occurs during the hours of 4:00 p.m. to 6:00 p.m. in the City of New York. Inspector Kanterman requested Police Officer Rice to motion the driver of the truck to pull his vehicle off the road. The officer did so and the driver pulled his vehicle onto the shoulder.
Inspector Kanterman approached the vehicle, displayed his shield, and asked the driver what his cargo was. The driver stated that he was hauling gasoline. Inspector Kanterman requested the driver to produce a bill of lading or manifest for the cargo. He complied with the request. The bill of lading indicated that the vehicle contained a cargo of 8,600 gallons of gasoline. It also indicated that the cargo had been picked up in New Jersey and was being carried to a destination in Suffolk County, New York.
Inspector Kanterman informed the driver that he was going to issue him a summons for violating the New York City “curfew regulations”, which forbid the hauling of hazardous cargo through the city between the hours of 4:00 p.m. and 6:00 p.m. without a fire department permit. Wheri the driver protested that it was after 6:00 p.m., the inspector asked him for his toll receipt from the Port Authority crossing. He produced the receipt which indicated that he had paid a toll at the Goethals Bridge at 5:51 p.m. on October 28,1982. The inspector then informed him that his receipt indicated that he had entered New York City before 6:00 p.m. that same evening. Inspector Kanterman then requested his driver’s license which the driver produced. *638 The driver was identified as Dean L. Baker, the defendant herein. At approximately 6:25 p.m. the inspector wrote and served a summons on the defendant.
Defendant’s motion must be denied. There was clearly no violation of his rights in the initial stop of his vehicle. People v Ingle (36 NY2d 413), authorizes a stop of a motor vehicle when an officer has an “articulable suspicion” that improper activity is occurring or has occurred. In this case, Inspector Kanterman knew that á truck without the proper fire department plate was on the highway at a time when it was highly probable that the defendant had been driving through at least some city streets illegally to get to the Verrazano-Narrows bridge. This was clearly sufficient to permit a stop of the truck.
Moreover, the nature of the business in which the defendant is engaged, i.e., the transportation of flammable materials, is such that heavy regulation by various governmental agencies is required and indeed provided for by statute. (Administrative Code of City of New York, §§ C1952.0, C19-57.0, subd b; § C19-152.0, subd b; New York City Charter, § 489.) In such cases, a defendant cannot hide behind the Fourth Amendment to prevent warrantless searches and seizures (United States v Biswell, 406 US 311, 316). Thus the strictures of People v Ingle (36 NY2d 413, supra) would not apply to this case in any event.
The action of the defendant in handing over his toll ticket when asked for did not occur in a custodial situation. It is clear that a defendant who is stopped for any traffic offense for which he is about to be given a summons is not in custody, particularly when the defendant knows that he is not about to be arrested (cf. People v Yukl, 25 NY2d 585). The instant situation is no different. Defendant knew that after the officer finished dealing with him, i.e., the issuance of a summons, he would be free to leave. While there may be circumstances in which a traffic stop could be viewed as an arrest, the intrusion here was clearly minimal. In the absence of a custodial situation, no Miranda warnings were required before the officer asked for the ticket (People v Phinney, 22 NY2d 288). Moreover, the request for the ticket should be viewed as part of an *639 administrative search and inquiry as per Biswell (406 US 311, supra).
Defendant’s motion to dismiss the charges against him in the interests of justice pursuant to CPL 170.40 is without merit since there was, as has been shown, no police misconduct in this case as there are not any other compelling circumstances. (People v Andrew, 78 AD2d 683.)
Defendant’s motion is denied in all respects.