Maeshalu, Ch. J.
 

 John Graham, a merchant of New York, claimed sundry parcels of goods shipped on board the Frances, as his sole property. The goods were shipped by William Graham & Brothers, merchants, of Glasgow, on account and risk of John Graham, merchant, of New York. *3491 There are :|:two bills of lading, each filled up with the name of John J Graham. There are also two invoices, each headed with the name-of William Graham
 
 &
 
 Brothers as shippers, and stating the goods to be shipped on account and risk of John Graham. The first of these invoices is marked in the margin thus, W. G. M I. P. and the other thus, [G.] There were also two lists of goods. The first headed, “ List of goods shipped by the Frances, for Messrs. John Graham
 
 &
 
 Co., New York.” This list is marked W. G. M L P. The other is headed, “ List of goods shipped by the Frances, for Messrs. Peter Graham & Co., Philadelphia.” These goods are accompanied by two letters, dated the 15th and 16th of July, signed William Graham & Brothers, the first addressed to Messrs. John Graham <fc Co., and the last to Messrs. Peter Graham
 
 &
 
 Co. The letter to John Graham
 
 &
 
 Co. treats of their trade generally, and contains only the following allusion to this shipment: “ You have herewith the ship Fanny’s accounts, to which refer; also invoice of sundry goods per Frances ; we hope they may go to a good market. We expect you will have about one hundred packages of English goods. There will be somewhat more to Philadelphia.” The letter to Peter Graham
 
 &
 
 Co. is also a general letter on the subject of their trade. It contains the following passage respecting the shipments by the Frances: “We have shipped by Frances a few goods well selected ; we could not get almost any cluster seeds.”
 

 The circuit judge directed the cause to stand for further proof. It appears from the affidavit of John Graham, that in the month of January, in the year 1809, he entered into a limited partnership with his brothers, William Graham and Peter Graham, who, as well as himself, are naturalized citizens of the United States. The business was to be conducted at New York, by himself, under the name of John Graham
 
 &
 
 Co. ; at Philadelphia, by Peter Graham, under the name of Peter Graham & Co.; and at Glasgow, by William Graham, under the name of William Graham & Brothers. That, from the commencement of the partnership, he has been in the con-*3501 stan* of carrying on extensive *business, with the knowledge of J his partners, on his private account, and also in connection with others. That the investment and disposal of the funds of the deponent, together with the management of the mercantile concerns of the firms composed as aforesaid, and the commission business, were the principal if not the sole business of William Graham
 
 Ss
 
 Brothers, at Glasgow. That, from the intimate knowledge they possessed of each others’ affairs, and in consequence of their connection as brothers, the distinction between his firm and his private character was not always preserved. It was the less attended to, because the affairs of the company and his individual concerns were frequently the subjects of the same letter, and it became the more usual to address him by the style of the firm, because there are several other persons
 
 *222
 
 of the same name in New York. He adds, that in making shipments on the sole account of the deponent, William Graham has been in the habit of assorting the whole into invoices of small quantities, calculated to suit the generality of purchasers in the New York market, and also that the goods in any one of the said invoices might be sold entire, or transshipped to Philadelphia, or any other market, with the original invoice accompanying the same, as such original invoice would inspire more confidence in the buyers. This circumstance occasioned the lists of property shipped by the Frances, and one of them to be addressed to Peter Graham & Co. He swears, in the most positive and precise terms, that the property is entirely his own, and was purchased with his private funds in the hands of William Graham.
 

 William Black deposes, that he has been long and intimately acquainted with John Graham, who is a man of fortune and charaeter, and has been in the habit of transacting much of his own business in the said Graham’s counting-house. That, from his knowledge of the affairs of the said Graham, he verily believes, that the said Graham, both before and since the war, has been in the habit of doing business on his private account, and has received many shipments in which neither of his brothers were interested. He has been concerned with the deponent, as part-owner of vessels, in which the deponent believes that neither William nor Peter Graham held any share. *Isaac Belt and David Dunham, merchants of New York, swear to facts similar to those stated by William Black.
 

 Charles Graham, of a different family from the claimant, swears, that in the year 1811, there were, according to the directory, six persons of the name of John Graham, in New York, one of whom was the deponent’s father ; and that mistakes were frequently made respecting each other’s letters which came through the post-office.
 

 William Hill, principal clerk of William Graham & Brothers, deposes to the different concerns, and to the nature of the business transacted by William Graham
 
 &
 
 Brothers, as stated in the affidavit of John Graham. That they had under their care ships and vessels in which John Graham alone was interested. That since an early period in the year 1811, the concern of William Graham
 
 &
 
 Brothers have not shipped any goods whatever, for or on account of the said copartnership, to either of their said establishments, or in any other manner whatsoever. That vessels continued to arrive, particularly the Trident, the Fanny and the Cuba, to the charge of the said William Graham
 
 &
 
 Brothers, for the account and risk of John Graham, in which ships and cargoes the said copartnership, or the said William Graham, had no share or interest whatsoever. The deponent has seen sundry letters from the said John Graham to the said William Graham & Brothers, to invest the moneys arising from the freight and cargoes of those ships, in goods, in behalf of him, the said John Graham, so soon as the British orders in council should be revoked ; and until then, to place the amount to his private credit in the books of William Graham & Brothers, which was done by the deponent as clerk. That this money was invested in the goods shipped by the Frances and other vessels, which were shipped on the sole account of John Graham, and were so entered on the books, by the instructions of William Graham. He states the practice of dividing shipments into small invoices, as is stated in the affidavit of John Graham.
 

 
 *223
 
 Peter Graham swears that he has not, and never had, any interest in the *3'2d S'00*!''3 shipped by the Frances. That * John Graham has been in the habit of transacting business on his own account, with the knowledge of his partners, and has frequently consigned his separate goods to Peter Graham & Co. William N. Steele, clerk of Peter Graham, deposes to the same facts ; and founds his belief that Peter Graham had no interest in the goods shipped by the Frances, on his knowledge of the business of the house. William Graham states in detail, with great explicitness, the circumstances narrated in the affidavits of John Graham and of William Hill, his principal clerk, and avers most solemnly that the goods shipped by the Frances, were the sole property of John Graham.
 

 The court below directed restitution of two-thirds of the cargo, as being the property of John and Peter Graham, and condemned one-third, as being the pi’operty of William Graham. From this sentence of condemnation, John Graham has appealed ; and from so much of the sentence as directs a x-estitxxtion of one-thix-d as the property of Peter Graham, the captors have appealed.
 

 It is certainly a rule in prize courts, dictated by good sense, and calculated to promote the purposes of justice, that letters accompanying the cai-go, written in good faith, in the prosecution of a fair and honest business, should have great influence in ascertaining the real px-oprietox-s of it. The letters on boax-d the Fx-ances are of this description. They are such as would be wx-itten, if the goods were really the property of the company ; but such as could scarcely have been written, if the goods were the sole property of John Graham. Had they been his sole property, it must have happened, that some expression would have been found in the letters indicating the fact. Men who write carelessly and without design, may not be very explicit; but it rarely happens, that they entirely conceal the truth. Thex-e will be some allusion to it.
 

 If the goods were the sole property of John Graham, why address a letter to Peter Graham
 
 &
 
 Co. ? The affidavits account rationally enough for making up separate invoices ; but addressing a letter to Peter Gx-aham
 
 &
 
 *3531 ^0-’ ^Philadelphia, by a vessel destined for New York, has very J much the appearance of a shipment destined for the company at that place, and not for John Graham, of New York. The expressions of that letter favor the same idea. “We have shipped you, by Frances, a few goods, well selected.” These cannot well be the goods of John Gi’aham. The language is surely not such as would be used in that state of things. “We could not get almost any cluster seeds.” These expressions have a necessary refex-ence to some letter of orders from Peter Graham, mentioning cluster seeds among the articles directed to be shipped.
 

 The affidavits produced on the order for further proof, are too positive to be disregarded, without considerable x-eluctance and hesitation. There are, however1, certain rules of evidence, the authority of which is admitted in all courts. One of these is, that if a written paper be referred to, which paper is in the power of the party, it ought to be produced. The affidavits of William Gx-aham and of William Hill state expressly, that letters had been x-eceived from John Graham, directing the disposition of car-goes shipped from Amex-ica, on his own account, and ordex-ing the proceeds to be invested in British manufactures, also on his own account, so soon as the
 
 *224
 
 British orders in council should be repealed. Why are not these letters produced? It is impossible not to perceive their necessity. Mr. John Graham must have copied these letters into his letter-book. Why has he not furnished some evidence of this fact. His letters must have been answered by William Graham, more explicitly than in that which was found on board the Frances. Why is no one of those letters produced ? It is impossible to account for the fact, that no one of these letters is an exhibit in the cause. The court feels itself bound, judging on this evidence, according to the rules of law, to consider the goods as the property of the company.
 

 But it is urged, on the part of the' claimant, that if permitted to give further proof, he will produce the correspondence and such other proof as will be entirely satisfactory to the court. Several circumstances exist in this cause to induce the court to allow still further time for the production of such further evidence as may place the transaction beyond any doubt. The cause is ordered to stand for further proof.