**Ray MARSHALL, etc., Plaintiff,**

v.

**NOLICHUCKY SAND COMPANY, INC., Defendant.**

**No. CIV–2–78–108.**

United States District Court, E. D. Tennessee, Northeastern Division.

Dec. 14, 1978.

On Motion for Stay Jan. 16, 1979.

Certiorari Denied April 21, 1980. See 100 S.Ct. 1835.

---

John H. Cary, U. S. Atty. and Richard K. Harris, Asst. U. S. Atty., Knoxville, Tenn. and Frederick W. Moncrief, Department of Labor, Arlington, Va., for plaintiff.

C. Berkely Bell, Jr., and Herbert R. Silvers, Greeneville, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

Mr. Charles E. McDaniel, an authorized representative of the plaintiff and employed as a federal mine safety and health inspector with the Mine Safety and Health Administration, went to the defendant's sand and gravel pit,[1] located within this district, on April 11, 1978 for the purpose of making a periodic safety and health inspection of such premises pursuant to the provisions of 30 U.S.C. § 813(a).[2] Mr. McDaniel spoke with Messrs. Hazen and Thomas Bewley, the president and vice president, respectively, of the defendant corporation. The latter Mr. Bewley refused to permit Mr. McDaniel to make such inspection. Mr. McDaniel left the premises, returned the following day, and was not permitted again to make his intended inspection. Each such refusal was based solely on the failure of Mr. McDaniel to present a search warrant authorizing the same. The sole purpose of the plaintiff's attempted inspection of the defendant's business premises was to check routinely for possible violations of the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 801, et seq. Mr. McDaniel had no knowledge of any specific violation thereof.

The plaintiff filed this action seeking a preliminary and permanent injunction to prohibit the defendant and its agents and employees from refusing his authorized representatives admittance to its mine, from refusing them permission to inspect the same, and from interfering with, hindering or delaying them in carrying out the provisions of the aforementioned act. The Court's jurisdiction was invoked under the provisions of 30 U.S.C. § 818(a)(1),[3] and is

---

1. The parties stipulated that the defendant's sand and gravel pit is subject to the provisions of the Federal Mine Safety and Health Act of 1977, *infra*. Thus, for present purposes this business is deemed to be a "mine" within the meaning of that act.

2. " * * * Authorized representatives of the Secretary [of Labor] * * * shall make frequent inspections and investigations in coal or other mines each year for the purpose of (1) obtaining, utilizing, and disseminating information relating to health and safety conditions, the causes of accidents, and the causes of diseases and physical impairments originating in such mines, (2) gathering information with respect to mandatory health or safety standards, (3) determining whether an imminent danger exists, and (4) determining whether there is compliance with the mandatory health or safety standards or with any citation, order, or decision issued under this subchapter or other requirements of this chapter. * * * For the purpose of making any inspection or investigation under this chapter, * * * the Secretary [of Labor], with respect to fulfilling his responsibilities under this Act, or any authorized representatives of the Secretary * * * shall have a right of entry to, upon or through any coal or other mine. * * *" 30 U.S.C. § 813(a).

3. " * * * The Secretary may institute a civil action for relief, including a permanent or temporary injunction, restraining order, or any other appropriate order in the district court of the United States for the district in which a coal or other mine is located or in which the operator of such mine has his principal office, whenever such operator or his agent—

(A) violates or fails or refuses to comply with any order or decision issued under this Act,

(B) interferes with, hinders, or delays the Secretary or his authorized representative * * * in carrying out the provisions of this chapter,

(C) refuses to admit such representatives to the coal or other mines,

(D) refuses to permit the inspection of the coal or other mine, or the investigation of an accident or occupational disease occurring in, or connected with, such mine,

(E) refuses to furnish any information or report requested by the Secretary * * * in furtherance of the provisions of this chapter, or

(F) refuses to permit access to, and copying of, such records as the Secretary or the Secre-

not disputed. Trial of this action on the merits was advanced and consolidated with the hearing of the plaintiff's application for a preliminary injunction. See memorandum opinion and order herein of September 14, 1978.

■ The defendant claims that the plaintiff's representatives have no right to enter upon its premises for inspection purposes without a warrant authorizing the same. Specifically, it is contended that the provisions of 30 U.S.C. § 813(a), which allow for warrantless inspections of mines,[4] and upon which the plaintiff relies, are violative of the Constitution, Fourth Amendment.[5] In support of this argument, the defendant relies primarily on the decision of the Supreme Court in *Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305. It was held therein that 29 U.S.C. § 657(a), which empowers representatives of the Secretary of Labor to search the work area of any employment facility within the jurisdiction of the Occupational Safety and Health Act of 1970 (OSHA), in order to inspect for safety hazards and regulatory violations, violates the Constitution, Fourth Amendment, in so far as it purports to authorize such inspections without a warrant.

■ In *Barlow's, supra,* the Supreme Court recognized, however, that " * * * [c]ertain industries have such a history of government oversight that no reasonable expectation of privacy * * * could exist. * * *" *Ibid.,* 436 U.S. at 313, 98 S.Ct. at 1821, 56 L.Ed.2d at 312[3]. Thus, there is a well-established exception to the search warrant requirements of the Constitution, Fourth Amendment, " * * * for 'pervasively regulated business[es]' * * * and for 'closely regulated' industries 'long subject to close supervision and inspection.' * * *" *Idem.,* quoting from *United States v. Biswell* (1972), 406 U.S. 311, 316, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87, 92–93 and *Colonnade Catering Corp. v. United States* (1970), 397 U.S. 72, 74, 77, 90 S.Ct. 774, 776, 777, 25 L.Ed.2d 60, 63, 65. The rationale of the *Biswell-Colonnade* rule is " * * * that a business, by its special nature and voluntary existence, may open itself to intrusions that would not be permissible in a purely private context. * * *" *G. M. Leasing Corp. v. United States* (1977), 429 U.S. 338, 353, 97 S.Ct. 619, 629, 50 L.Ed.2d 530, 544. Thus, in regulating these

---

tary of Health, Education, and Welfare determines necessary in carrying out the provisions of this chapter. * * *" 30 U.S.C. § 818(a)(1).

4. Although this statute does not say on its face, that its provisions are operative without a search warrant, the legislative history clearly shows that the Congress contemplated warrantless inspections. The Senate Report states that 30 U.S.C. § 818(a)(1):

" * * * authorizes the Secretary of Labor * * * to enter upon, or through any mine for the purpose of making any inspection or investigation under this Act. This is intended to be an absolute right of entry without need to obtain a warrant. The Committee notes with approval the decision of the three-judge Federal Court in *Youghiogheny & Ohio Coal Company v. Morton,* 364 F.Supp. 45 (S.D.Ohio 1973) which holds the parallel provision of the Coal Act permitting unannounced warrantless inspection of coal mines constitutional. Safety conditions in the mining industry have been pervasively regulated by Federal and State law. The Committee intends to grant a broad right-of-entry to the Secretaries or their authorized representatives to make inspections and investigations of all mines under this Act without

first obtaining a warrant. This intention is based upon the determination by legislation. The Committee notes that despite the progress made in improving the working conditions of the nation's miners under present regulatory authority, mining continues to be one of the nation's most hazardous occupations. Indeed, in view of the notorious ease with which many safety or health hazards may be concerned if advance warning of inspection is obtained, a *warrant requirement would seriously undercut* this Act's objectives.

"The Committee has specifically adopted the prohibition or advance notice of inspections which is currently the rule under the Coal Act, and rejects the provision of the Metal Act which permits such advance notice. * * *" 3 U.S.Code Cong. & Admin.News (1977), pp. 3401, 3427.

5. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches * * *, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation. * * *" Constitution, Fourth Amendment.

particular industries, the Congress has broad authority to fashion standards of reasonableness for the purposes of Fourth Amendment searches. *Ibid.*, 429 U.S. at 353, 97 S.Ct. at 629, 50 L.Ed.2d at 544[9].

The liquor and firearms businesses are illustrative; they represent responses to relatively unique circumstances, so that " * * * when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full threat of close government regulation. * * * " *Marshall v. Barlow's, Inc., supra.* The element that distinguishes these enterprises from ordinary businesses is a long tradition of close government regulation, of which any person who chooses to enter such a business must already be aware. *Idem.*

The plaintiff contends that the mining industry is also such a closely regulated industry as to fall within the *Biswell-Colonnade* exception to the Fourth Amendment's warrant requirement. The Congress appears to have agreed as is reflected in the legislative history of the instant statute: " * * * Safety conditions in the mining industry have been pervasively regulated by Federal and State law. * * * " 3 U.S.Code Cong. & Admin.News (1977), pg. 3427. As to the coal mining industry, it has been determined in this circuit that such industry " * * * has a history of close federal regulation under the aegis of the Commerce Clause. * * * " *United States v. Consolidated Coal Co.,* C.A. 6th (1977), 560 F.2d 214, 220[5], vacated and remanded (1978), 436 U.S. 942, 98 S.Ct. 2842, 56 L.Ed.2d 783, judgment and opinion reinstated on remand (1978), 579 F.2d 1011; *accord: Youghiogheny and Ohio Coal Company v. Morton,* D.C.Ohio [6] (1973), 364 F.Supp. 45, 49, esp. n. 3. The present act, Public Law 95–164 of November 9, 1977, brought the operation of all coal and other types of mines under a single legislative canopy. It essentially combined the Federal Coal Mine Safety and Health Act of 1969, 30 U.S.C. § 801, et seq., with the Federal Metal and Nonmetallic Mine Safety Act, 30 U.S.C. § 721, et seq.

 The warrantless inspection provisions of 30 U.S.C. § 813(a) come before this Court with a strong presumption in favor of their constitutionality. *Lockport v. Citizens For Community Action* (1977), 430 U.S. 259, 272, 97 S.Ct. 1047, 1055, 51 L.Ed.2d 313, 325[12]; *Marshall v. Barlow's Inc.* (1977), 429 U.S. 1347, 1348, 97 S.Ct. 776, 777, 50 L.Ed.2d 739, 740[2] (Rehnquist, J., as circuit justice). This presumption continues until the statute's unconstitutionality is shown beyond a rational doubt, *F. H. A. v. Darlington* (1958), 358 U.S. 84, 90–91, 79 S.Ct. 141, 146, 3 L.Ed.2d 132, 137 (headnote 6), rehearing denied (1959), 358 U.S. 93,7, 79 S.Ct. 310, 3 L.Ed.2d 311; and its provisions must be upheld, unless it is shown clearly to be incompatible with the Constitution, *New York v. O'Neill* (1959), 359 U.S. 1, 6, 79 S.Ct. 564, 568, 3 L.Ed. 585, 589 (headnote 4). That presumption of constitutionality is especially compelling where, as here, the validity of an act of the Congress turns on what is a reasonable search under the Constitution, Fourth Amendment, and " * * * '[o]bviously the Court should be reluctant to decide that a search thus authorized by Congress was unreasonable and that the Act was therefore unconstitutional.' * * * " *United States v. Watson* (1976), 423 U.S. 411, 416, 96 S.Ct. 820, 824, 46 L.Ed.2d 598, 605[2], quoting from *United States v. Di Re* (1948), 332 U.S. 581, 585, 68 S.Ct. 222, 224, 92 L.Ed. 210.

 Although not wholly free of doubt, in the opinion of this Court, the provisions of 30 U.S.C. § 813(a), *supra*, fall within the *Biswell-Colonnade* exception to the warrant requirement of the Constitution, Fourth Amendment. *Barlow's, supra*, is readily distinguishable from the instant situation: there, the invalidated OSHA statute encompassed virtually every type of industry regardless of the extent of that industry's history of regulation by the federal government; here, we are dealing with

---

**6.** This was a District Court of three judges comprised by Circuit Judge Peck and District

Judges Kinneary and Rubin.

a statute relating to a single industry (mining), which industry has had a history of close federal supervision and regulation.[7] Thus, considering the specific enforcement needs and privacy guarantees of 30 U.S.C. § 813(a), *Marshall v. Barlow's Inc., supra,* 436 U.S. at 321, 98 S.Ct. at 1825, 56 L.Ed.2d at 317[7], the plaintiff's attempt to "* * * search * * *" the defendant's premises on this occasion was reasonable. The language of Mr. Justice White, writing for the Supreme Court, is particularly appropriate in the present context:

\* \* \* \* \* \*

\* \* \* [I]f the law is to be properly enforced and inspection made effective, inspections without warrant must be deemed reasonable official conduct under the Fourth Amendment. * * * Here, if inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible. * * * [W]here, as here, regulatory inspections further urgent federal interest, and the possibilities of abuse and the threat to privacy are not of impressive dimensions, the inspection may proceed without a warrant where specifically authorized by statute. * * *

\* \* \* \* \* \*

*United States v. Biswell, supra,* 406 U.S. at 316, 317, 92 S.Ct. at 1596, 32 L.Ed.2d at 92, 93.

■ Accordingly, the defendant Nolichucky Sand Company, Inc., its officers, agents and employees, hereby are ENJOINED permanently from:

—refusing authorized representatives of the plaintiff admittance to its mining premises,

—refusing such representatives permission to inspect such premises, and

—hindering or delaying such representatives in conducting periodic safety and health inspections of its premises under the provisions of 30 U.S.C. § 813(a).[8] 30 U.S.C. § 818(a)(1). Judgment to that effect will enter, Rule 58(1), Federal Rules of Civil Procedure, and the above injunction will issue and be served on the defendant.

## ON MOTION FOR STAY

■ The defendant-appellant applied to this Court for a stay, Rule 8(a), Federal Rules of Appellate Procedure, and suspension, Rule 62(c), Federal Rules of Civil Procedure, of its injunction of December 14, 1978 herein during the pendency of the former's appeal. To be entitled to such interim relief thereunder, the defendant-appellant must have made "* * * (1) a strong showing that [it] is likely to succeed on the merits of the appeal; (2) a showing that, unless a stay is granted, [it] will suffer irreparable injury; (3) a showing that no substantial harm will come to other interested parties; and (4) a showing that a stay will do no harm to the public interest. * * *" *Reserve Mining Company v. United States,* C.A. 8th (1974), 498 F.2d 1073, 1076–1077[1], stay denied (1974), 419 U.S. 802, 95 S.Ct. 287, 42 L.Ed.2d 33, application denied (1975), 420 U.S. 1000, 95 S.Ct. 1411, 43 L.Ed.2d 758, cause remanded and modified in part (1975), *sub nom. Reserve Min. Co. v. Environmental Protection Agcy.,* C.A. 8th, 514 F.2d 492.

**7.** This distinguishing factor was recognized by the Supreme Court in *Barlow's, supra* :

"* * * 'A central difference between those cases [*Colonnade* and *Biswell*] and this one [*Barlow's*] is that businessmen engaged in such federally licensed and regulated enterprises accept the burdens as well as the benefits of their trade, whereas the petitioner here was not engaged in any regulated or licensed business. The businessman in a reg-

ulated industry in effect consents to the restrictions placed upon him.' * * * " *Marshall v. Barlow's Inc., supra,* 436 U.S. at 313, 98 S.Ct. at 1821, 56 L.Ed.2d at 312, quoting from *Almeida-Sanchez v. United States* (1973), 413 U.S. 266, 271, 93 S.Ct. 2535, 2538, 37 L.Ed.2d 596.

**8.** Such determination of this action on the merits renders moot the motion herein of the plaintiff for a preliminary injunction.

Pretermitting any consideration of (1) and (2), *supra*, this Court is of the opinion that the defendant-appellant is not entitled to such stay and suspension under (3) and (4) of such governing standards, *supra*. The Congress itself recognized that " * * * mining continued to be one of the nation's most hazardous occupations * * *" and took note of the " * * * many safety or health hazards * * *" for employees involved in it. 3 U.S.Code Cong. & Admin.News (1977), p. 3427. Now that it has been adjudicated that federal officials may enter and inspect the gravel-mining premises of the defendant-appellant lawfully, to determine whether there are subsisting health or safety hazards to its workmen and others there, and that they may do so without further delay or hinderance by the defendant-appellant, it would be a grave exhibition of irresponsibility for this Court now to delay such inspection while the defendant-appellant argues the error of its adjudication.

The defendant-appellant has not shown that substantial harm may not come to its employees in the meantime or that the requested stay will do no harm to the public interest. For such reasons, its application for such stay and suspension hereby is

DENIED.