**ADUST VIDEO, Appellant,**

**v.**

**NUECES COUNTY, Texas, Appellee.**

**No. 13–95–239–CV.**

Court of Appeals of Texas, Corpus Christi.

May 20, 1999.

---

John J. Fahle, III, San Antonio, for Appellant.

Walter D. Bryan, Assistant County Attorney, Sandra Huhn, County Attorney, Annette L. Smith, Assistant Attorney General, Carl Lewis, County Attorney, Corpus Christi, for Appellee.

Before Chief Justice SEERDEN and Justices DORSEY and HINOJOSA.

## OPINION

Opinion by Justice DORSEY.

This action was initiated by the Nueces County Attorney at the behest of the Nueces County Public Health Department against Adust Video, appellant, for violations of the Texas Health and Safety Code.[1] Following the issuance of a temporary restraining order and an agreed temporary injunction, the County sought and received a permanent injunction. The trial court found a public health nuisance existed and issued an injunction which, among other things, prohibits "sexual activity" on the Adust Video premises. Adust appeals by three points of error, challenging the lack of specificity of the findings of fact, the injunction's failure to afford notice of what specific acts it prohibits, and violation of appellant's First Amendment right to free speech.

As there is no statement of facts, we rely on the parties' briefs for the applicable facts. Adust Video owns and operates an adult book and video store in Nueces County. In addition to displays of adult literature and video tapes for sale and rent, the store also offered its patrons eight private, coin-operated viewing booths and a sixteen-seat theater for on-site screening of adult movies. During December 1994, Nina Sisley, an inspector for the county heath agency, twice inspected appellant's business premises and, on both occasions, discovered conditions she described as "unsanitary." Specifically, Sisley found urine and seminal fluid on the seats, floor, and walls of the restroom, booths, and theater. The County asserts these conditions create a high risk for the transmission of diseases, including sexually transmitted diseases such as syphilis, gonorrhea, and AIDS.

The health department notified Adust of its findings and afforded Adust an opportunity to clean up the premises. The County concluded Adust made no effort to correct these conditions so, pursuant to health and safety code sections 341.012 and 343.013, sought and obtained a temporary restraining order, followed by a tem-

---

1. TEX. HEALTH & SAFETY CODE ANN. §§ 341, 343   (Vernon 1992 & Supp.1999).

porary injunction, and finally, after a trial before the court, a permanent injunction.

The trial court's order, in the name of abating a public health nuisance, enjoined "sexual activity" on Adust's premises. In addition to provisions requiring a general increase in lighting throughout the establishment, the order required verbal and written notices and posted signs warning all who entered that sexual activity was strictly forbidden within. The trial court ordered that any person desiring entry into a booth or the theater must sign an individualized written warning which must include their printed name, phone number, address, and driver's license number. Adust is required to maintain the original of these receipts for random, warrantless inspection by the County. The management must refuse entry to the booths or theater to any person refusing to sign and, if they enter anyway, must call the police to report the trespass. "Sexual activity," when discovered, must be halted and reported to the police. Adust was also required to modify the building so that the staff would "have a clear view at all times of all events occurring within the premises." If the court's intentions were in any way unclear, the order went on to permanently enjoin Adust from permitting sexual activity within its premises by any person; from maintaining an unsanitary condition; from tolerating a nuisance; from refusing to comply with the injunction; or from refusing to consent to random warrantless inspections by the State.

■ Our review of appellant's arguments is seriously limited because there is no statement of facts. *See Brockette v. Sosa*, 675 S.W.2d 807, 809 (Tex.App.—Corpus Christi 1984, no writ). The party who seeks appellate review of a particular point is responsible for presenting a complete record on that point because it has the burden of proving error. *Simon v. York Crane & Rigging Co., Inc.*, 739 S.W.2d 793, 795 (Tex.1987); *Brockette*, 675 S.W.2d at 809. We presume the evidence supports injunctive relief.

## I. THE RULES GOVERNING INJUNCTIONS

In its first point of error, Adust contends the trial court's order violates the rules of civil procedure because it does not define what unsanitary conditions exist on appellant's premises.

Rule of civil procedure 683 provides:

Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained....

TEX.R. CIV. P. 683.

■ Though the rule on its face applies to *every order* granting an injunction, the provision compelling a detailed explanation of the reason for the injunction's issuance has been held only to apply to temporary injunctions or suits requesting ancillary injunctive relief. *City of Houston v. Morgan Guar. Intern. Bank*, 666 S.W.2d 524, 536 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Gasperson v. Madill Nat'l Bank*, 455 S.W.2d 381, 398 (Tex.Civ. App.—Fort Worth 1970, writ ref'd n.r.e.); *Texas Liquor Control Bd. v. Bacon*, 443 S.W.2d 312, 317 (Tex.Civ.App.—Austin 1969), *rev'd on other grounds*, 456 S.W.2d 891 (Tex.1970); *Alexander Schroeder Lumber Co. v. Corona*, 288 S.W.2d 829, 835 (Tex.Civ.App.—Galveston 1956, writ ref'd n.r.e.). We are persuaded that rule 683's requirement for detailed explanations of reasons for the issuance of the injunction does not apply to a permanent injunction that is the sole relief sought by the action. The rule does apply to injunctive relief that is ancillary to other relief sought in the action. In *Schroeder*, the Galveston court expressly held: "[W]e reach the conclusion that [rule 683] applies only to ancillary injunctive relief and not to final judgments in suits, the sole object of which is to obtain a perpetual injunction." *Schroeder*, 288 S.W.2d at 835.

The *Schroeder* rule was applied in *Gasperson:* "such rule [683] only applies to ancillary injunctive relief and not to final judgments." *Gasperson*, 455 S.W.2d at 398. The rule was also applied, although modified, in *Bacon* (in affirming the issuance of a permanent injunction) where the court said, "[I]t has been held that Rule 683 ... does not apply to permanent injunctions insofar as it provides that the order shall state reasons for its issuance." *Bacon*, 443 S.W.2d at 317. We likewise hold that where the injunction is not ancillary to other relief sought, rule 683's provision requiring the injunction to state the reasons for its issuance in specific terms does not apply.[2]

■ However, even should that provision of rule 683 apply, we hold that the order sufficiently apprized Adust of the reason for its issuance. The order prohibits appellant from permitting itself to operate as a public health nuisance. Specifically, the trial court found that Adust permitted its patrons to engage in sexual activity which resulted in an unsanitary condition constituting a public health nuisance. We hold the order satisfactorily states the reasons for its issuance. Appellant's first point of error is overruled.

Adust also attacks the trial court's order by way of rule 683 in its second point of error, claiming the order does not sufficiently specify what appellant is restrained from doing. Specifically, Adust challenges the order's language that it is prohibited from "maintaining an unsanitary condition," and from "tolerating a nuisance to occur within its premises."

■ Rule 683's requirement that orders be specific in terms and describe in reasonable detail the acts to be restrained applies to permanent injunctions. A permanent injunction should not be more comprehensive or restrictive than justified by the pleadings, evidence, and usages of equity. *Thompson v. Thompson Air Conditioning & Heating, Inc.*, 884 S.W.2d 555, 559 (Tex.App.—Texarkana 1994, no writ). The Texas Supreme Court held:

> An injunction decree must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing. (Citation omitted). But obviously the injunction must be in broad enough terms to prevent repetition of the evil sought to be stopped, whether the repetition be in form identical to that employed prior to the injunction or (what is far more likely) in somewhat different form calculated to circumvent the injunction as written.

*San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 156 Tex. 7, 15, 291 S.W.2d 697, 702 (1956).

■ The order before us contains nine specific instructions to appellant regarding lighting, signage, and its duties regarding patrons wishing to use the theater and booths. Following these nine detailed instructions are five general instructions that are apparently intended to anticipate repetition of the behavior lending itself to creation of a public health nuisance in, as the supreme court observed, "somewhat different form calculated to circumvent the injunction." *Id.*

Adust's complaint focuses on two of these general instructions. Specifically, it cites orders number two and three which prohibit Adust "from maintaining an unsanitary condition within its premises at its

---

2. *State v. Cook United, Inc.*, 464 S.W.2d 105, 107 (Tex.1971), held that it was not necessary to state in a *temporary injunction* why the applicant would be endangered by probable injury, holding that the statute itself declares the injury, by making sales on Saturday and Sunday a public nuisance. Chief Justice Calvert concurred, but stated the requirement of Rule 683 was mandatory. He was recognizing an exception in cases involving injunctive orders restraining statutorily declared public nuisances.

place of business" and from permitting "a nuisance to occur on its premises."

The health and safety code defines "sanitary" as "a condition of good order and cleanliness that precludes the probability of disease transmission." *See* TEX. HEALTH & SAFETY CODE ANN. § 341.001(7) (Vernon 1992). Similarly, section 341.011 itemizes twelve conditions that constitute public health nuisances, including: "(5) sewage, human excreta, . . . or other organic wastes deposited . . . or exposed in such a way as to be a potential instrument or medium in disease transmission to a person or between persons; . . . and (12) an object, place or condition that is possible and probable medium of disease transmission to or between humans." TEX. HEALTH & SAFETY CODE ANN. § 341.011 (Vernon 1992).

■ When the purpose of an injunction is to protect the public, the test of required specificity is reasonableness, and in framing the decree, doubt should be resolved against the violator. *Lloyd A. Fry Roofing Co. v. State,* 541 S.W.2d 639, 646 (Tex. Civ.App.—Dallas 1976, writ ref'd n.r.e.); *Davies v. Unauthorized Practice Comm. of State Bar of Tex.,* 431 S.W.2d 590, 595 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.). Given the definitions supplied by statute of "nuisance" and "sanitary conditions," we hold the injunction is reasonably specific.

We overrule appellant's second point of error.

## II. CONSTITUTIONAL ATTACKS

In its third point of error, Adust challenges the injunction as a violation of its right to free speech under the First Amendment to the U.S. Constitution.[3] It argues that the constraints imposed by the injunction have a "chilling effect" both on its ability to convey its constitutionally protected message and the right of its customers to receive it. By so doing, Adust is asserting the First Amendment rights of its customers to view adult films.

■ The general rule is that a party may only assert a violation of its own rights. "However, in the First Amendment context, 'litigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 394, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) (quoting *Secretary of State of Md. v. J. H. Munson Co.,* 467 U.S. 947, 956–57, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984)).

■ We review an injunction on First Amendment grounds under the same rule as a statute. Adust may assert the constitutionally protected rights of its patrons.[4]

The State concedes, and we so presume for the purposes of this opinion, that the materials appellant seeks to exhibit are presumptively protected by the First Amendment to the United States Constitu-

---

3. Adust's brief refers to Article I, section 8 of the Texas Constitution, but its argument focuses solely on the First Amendment of the United States Constitution. Consequently, we do not consider the extent to which Article I, section 8 provides an independent basis for the protection of Adust's rights. *See Tilton v. Moye,* 869 S.W.2d 955, 958 n. 2 (Tex.1994). Points of error not briefed are waived. *Paramount Nat'l. Life Ins. Co. v. Williams,* 772 S.W.2d 255, 263 (Tex.App.—Houston [14th Dist.] 1989, writ denied); *Parker v. TXO Prod. Corp.,* 716 S.W.2d 644, 648 (Tex.App.—Corpus Christi 1986, no writ).

4. The right to speak freely is meaningless without the corresponding right of a listener to hear what is spoken. The listener's right to receive information is also protected by the First Amendment. *See Kleindienst v. Mandel,* 408 U.S. 753, 762, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); *Red Lion Broad. v. F.C.C.,* 395 U.S. 367, 390, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *Thomas v. Collins,* 323 U.S. 516, 534, 65 S.Ct. 315, 89 L.Ed. 430 (1945).

tion. Appellant argues that the conditions imposed by the trial court infringe upon its free speech rights and those of its customers.

■ Restrictions merely on the time, place, or manner of exercise of free speech rights violate no constitutional protections if sufficiently justified and narrowly enough drawn. The Supreme Court in *Ward v. Rock Against Racism,* 491 U.S. 781, 109˙ S.Ct. 2746, 105 L.Ed.2d 661 (1989), set out the appropriate standard for reviewing restrictions on the time, place or manner of speech:

> [T]he government may impose reasonable restrictions of the time, place, or manner of protected speech, provided restrictions "are [1] justified without reference to the content of the regulated speech, that they are [2] narrowly tailored to serve a significant governmental interest, and that they [3] leave open ample alternative channels for communication of the information."

*Id.* at 791, 109 S.Ct. 2746 (*quoting Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)). Because the injunction places restrictions on appellant's ability to display presumptively protected materials to its customers, we review the provisions of the injunction under that analysis.

■ Where the acts of the parties are divisible regarding lawful and unlawful conduct, an injunction may not be framed so broadly so as to prohibit the enjoyment of lawful rights. *Kulkarni v. Braeburn Valley W. Civic Ass'n,* 880 S.W.2d 277, 278 (Tex.App.—Houston [14th Dist.] 1994, no writ). Since appellant presumably has the guaranteed constitutional right to exhibit these materials to adult patrons, the injunction should not prohibit or unduly restrict appellant's free enjoyment of that right.

In addition to the government's interest in sanitation, the government has a significant interest in preventing the spread of sexually-transmitted diseases. A city has a substantial interest in regulating sexually-oriented businesses. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). The State has a significant interest in preventing the spread of sexually transmitted disease through sexual activity on appellant's premises. *See John Doe v. City of Minneapolis,* 898 F.2d 612, 617 (8th Cir.1990) (holding that the ordinance at issue in that case advanced the significant governmental interest in combating the spread of the AIDS virus).

■ The standard of review when a trial court grants or denies a permanent injunction is limited to whether the trial court clearly abused its discretion. *Morris v. Collins,* 881 S.W.2d 138, 139–40 (Tex. App.—Houston [1st Dist.] 1994, writ denied). We consider whether the trial court could reasonably have reached only one decision, and whether its decision was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992); *AIG Risk Mgmt., Inc. v. Motel 6 Operating L.P.,* 960 S.W.2d 301, 308 (Tex.App.—Corpus Christi 1997, no writ).

## III. PARTICULAR PROVISIONS

### A. Visibility and lighting

■ Adust complains about particular requirements of the injunction that apply to visibility of activities on the premises and the adequacy of lighting to assure visibility. Those provisions are the following:

1. Any employee or agent of the Defendant operating or managing the business shall have a clear view at all times of all events occurring within the premises.

2. The theater shall have adequate lighting at all times that said business is open to the public.

3. The business shall have adequate running lights on the floor of the theater common to commercial theaters.

4. The business shall have a lighting system of appropriate degree to allow a sufficient measure of visibility so that, if sexual activity occurs or is about to occur within the premises, whether such activity is by a person alone or with another, such conduct would be obvious and visible to any person managing the business.

The purpose of the injunction is to prevent the unsanitary conditions that have been repeatedly found on the premises. Those conditions are the result of sexual activities throughout the business. By preventing sexual contacts from occurring, it is hoped the areas will be kept sanitary. This paragraph, requiring all areas to be visible to management, is to prevent sexual activity from occurring. Adust argues that sexual activity taking place behind the closed doors of a room, however small, is not illegal. Although that may be correct, such is not speech protected by the First Amendment. Adust has a right to exhibit films and sexually oriented material under the Constitution, but such right is unrelated to another person's right, if any, to engage in sexual conduct.

Sexual activity in public places is prohibited by the Texas Penal Code. *See* TEX. PENAL CODE ANN. §§ 21.07, 21.08 (Vernon 1994). Peep show booths have been held to be public places. *Liebman v. State*, 652 S.W.2d 942, 944–45 (Tex.Crim.App.1983). Theaters and retail shops open to the public are public places.

The United States Supreme Court has concluded patrons of adult video theaters have no right to anonymity in viewing films. *Paris Adult Theatre v. Slaton*, 413 U.S. 49, 65, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). In cases dealing with substantially similar issues, similar provisions have withstood challenge. *See Bamon v. City of Dayton*, 923 F.2d 470, 473 (6th Cir. 1991); *FW/PBS, Inc. v. City of Dallas*, 837 F.2d 1298 (5th Cir.1988). This requirement does not affect Adust's ability to sell or lease its films nor its patrons' right to view them. There is nothing improper in those portions of the injunction.

## B. Mandatory Warnings

■ The next three paragraphs deal with mandatory warnings to Adust's patrons:

5. The management, including any operators and employees of the Defendant, shall be under a continuing obligation and duty to give verbal notice to any person who enters the premises that any sex[ual] activity, whether by that person alone or with another, is absolutely prohibited.

6. The management, including any operators and employees of the Defendant, shall post and permanently maintain notice in the following locations: on the exterior of the entrance door, at the place where payment is made, at the entrance area to the theater, at the entrance to the peep show booth, on the interior wall of each peep show booth, on each interior wall of the theater, on each interior wall of the business, on the entrance door to each restroom premises [sic], and on eac[h] interior wall of each restroom; which shall state that no sexual activity by any person, whether alone or with another, is permitted, allowed or tolerated. The notice shall be sufficient if it substantially states the following:

"WARNING!

No Sexual Activity By Any Person,

Whether Alone Or With
Any Other Person,

Is Permitted, Allowed, or Tolerated
In or About the Premises.

Violators Will Be Removed
From the Premises,

Will Be Denied Future Entry
Onto the Premises And

Will Be Referred To The Police
For Criminal Prosecution."

Adust argues that such warnings are bound to have a chilling effect on the

store's patrons, particularly the unsophisticated, and that the warnings do not promote sanitary conditions. The purpose of the injunction is to prohibit the unsanitary conditions that resulted from sexual conduct on the Adust premises. With a view towards eliminating the occasions for sexual conduct, the warning advises the public that such activities are prohibited. These notices do not affect either the ability of Adust to sell or rent its materials or its patrons to purchase them. We find the paragraphs are reasonably designed to further the government's legitimate health interests.

## C. THE IDENTIFICATION ORDER

■ The next paragraph provides:

7. The management, including the operators and all employees of the Defendant, shall give to each person wanting to enter the theater or any peep show booth a written notice that no sexual activity by any person, whether alone or with another, is permitted, allowed or tolerated.

■

### ENTRY RECEIPT

I have received written notice of the above Warning. I understand the warning.

The entry receipt requires the potential patron to sign the notice, print his name, and divulge his address, phone and driver's license number. Adust is to maintain the originals on file for no-notice inspection by "appropriate law enforcement authorities." No person is to be allowed into the theater or peep show booth who refuses to sign the entry receipt, and all who enter without signing are to be advised they are committing a trespass. Adust's management is ordered to immediately call law enforcement authorities to enforce the warning and receipt requirements.

■ While this order does not directly prohibit the exercise of Adust's or its patrons' freedom of speech, the First Amendment also protects against government inhibition as well as prohibition. *Lamont v. Postmaster Gen.*, 381 U.S. 301, 309, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965) (Brennan, J., concurring). An identification requirement exerts an inhibitory effect, *Talley v. California*, 362 U.S. 60, 64–65, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960), and therefore raises First Amendment issues comparable to those raised by direct government imposed prohibitions. *Fabulous Assocs. v. Pennsylvania Pub. Util. Comm'n*, 896 F.2d 780, 785 (3d Cir.1990).

The State cites *Pollard v. Cockrell*, 578 F.2d 1002, 1015–16 (5th Cir.1978), for authority that obtaining and keeping such permits is rationally related to protecting public health, in that, if contaminants are found, it may be necessary to locate and notify patrons of possible exposure to disease. But Pollard involved a massage parlor and the requirement that a detailed "appointment book" be maintained. The aims of such a list is to keep minors from using such establishments and in preventing patrons from soliciting proscribed sexual contacts. *Id.* at 1016.

The main purpose of such a requirement for Adust is to inhibit potential customers from viewing the sexually-oriented films by their loss of anonymity. The requirement is not a reasonable restriction on Adust's business and it has no rational relationship to the prevention of disease, sexually transmitted or otherwise. The County has not borne its heavy burden of demonstrating that the compelling state interest could not be served by restrictions that are less intrusive on protected forms of expression. *See Sable Communications v. F.C.C.*, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989).

Adust's point is sustained and we strike the requirement that patrons complete an entry receipt, giving their names, addresses, and other personal information, as a condition of entry to the theater and peep show booths.

Because we have stricken the requirement that Adust collect patrons' identification information, we need not consider Adust's complaint that the provision for warrantless inspection of these receipts is improper.

### D. Reporting Requirement

■ Adust next complains of the injunction's requirement that:

9. The management, including any operators and employees of the Defendant, upon suspecting or seeing any sexual activity within the premises by any person, whether alone or with another, shall immediately cause the person or persons to stop, cease and desist such activity, and shall immediately call law enforcement authorities to report the commission of such activity.

Adust complains this language requires it to report suspected sexual activity. We agree the paragraph as written is confusing and, to the extent that it imposes a requirement to report suspicions, overly broad. We find the requirement to report violations of the injunction's prohibitions appropriate, however, and cannot conclude this paragraph is not reasonably designed to further the County's interests.

Appellant's point is sustained. The first portion of the paragraph is changed to read, "The management, including any operators and employees of the Defendant, upon detecting any sexual activity within the premises by any person, . . . . "

### E. Random Inspections

■ The order requires Adust to "consent to random inspection by the appropriate law enforcement authorities of the State." Adust challenges this provision under the First and Fourth Amendments, to the extent that it authorizes warrantless searches.

■ A warrant is generally required for authorities to search portions of a commercial enterprise that are not open to the public. See v. City of Seattle, 387 U.S. 541, 543, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). A warrantless search of commercial premises may be reasonable when the business is "closely regulated." In such a case the privacy interests of the owner are weakened and the government interest in regulating are higher. New York v. Burger, 482 U.S. 691, 700, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). The expectation of privacy that the owner of commercial property enjoys may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections. United States v. Biswell, 406 U.S. 311, 316, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972).

The Supreme Court has recognized this exception in four industries. See Burger, 482 U.S. at 703–04, 107 S.Ct. 2636 (automobile junkyards); Donovan v. Dewey, 452 U.S. 594, 598–99, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981) (coal mining); Biswell, 406 U.S. at 316, 92 S.Ct. 1593 (firearm and ammunition sales); Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (liquor industry). Lower federal courts and some state courts have extended the exception to other industries.[5]

5. Warrantless administrative searches have been upheld in the following contexts: commercial fishing, United States v. Raub, 637 F.2d 1205 (9th Cir.1980); State v. Mach, 23 Wash.App. 113, 594 P.2d 1361 (1979); shipping, United States v. Espinosa–Cerpa, 630 F.2d 328, 333–34 (5th Cir.1980); pleasure boating, United States v. Whitmire, 595 F.2d 1303, 1312–13 & n. 22 (5th Cir.1979), cert. denied, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); but cf. United States v. Piner, 608 F.2d 358 (9th Cir.1979) (Coast Guard's warrantless safety inspections of small pleasure vessels must be limited to daylight hours unless there is articulable cause for nighttime boarding); water pollution-related activities, In re State Dep't of Envirl. Protec., 177 N.J.Super. 304, 426 A.2d 534 (App.Div.1981); food and drug dealers, United States v. Schiffman, 572 F.2d 1137 (5th Cir.1978); mining and mineral extraction, Marshall v. Texoline Co., 612 F.2d 935 (5th Cir.1980); licensed automobile dismantlers, used parts dealers, and second-hand goods dealers, People v. Woolsey, 90 Cal.App.3d 994,

■ In *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Court struck down the administrative search provision of section 8(a) of the Occupational Safety and Health Act of 1970 because it failed to tailor the scope and frequency of the inspections to the particular health and safety concerns posed. *Id.* at 323, 98 S.Ct. 1816. Also the Act did not provide any standards to guide inspectors in the exercise of their authority to search. *Id.* "Where Congress has authorized inspection but made no rules governing the procedures that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." *Colonnade,* 397 U.S. at 77, 90 S.Ct. 774. In such cases, a warrant may be necessary to protect the owner from the "unbridled discretion [of] executive and administrative officers," *Barlow's,* 436 U.S. at 323, 98 S.Ct. 1816, by assuring him that reasonable legislative or administrative standards for conducting an inspection are satisfied with respect to a particular establishment. *Camara v. Municipal Ct. of San Francisco,* 387 U.S. 523, 538, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

■ "The regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to law and has a properly defined scope, and it must limit the discretion of the inspecting officers." *Burger,* 482 U.S. at 703, 107 S.Ct. 2636.

This provision of the injunction requires appellant to "consent" to random inspections. The vagueness of the order raises certain problems. The order does not limit the "consent" to inspections to be conducted at any time, the scope of the inspection, the area to be inspected, whether the inspection is limited to the business premises of appellant or could extend to other places, or whether appellant's business records are to be included. The absence of conditions on the inspections violates the constitutional requirements for such administrative searches. The injunction must have "a properly defined scope, and it must limit the discretion of the inspecting officers." *Id.* We conclude the provision requiring appellant to consent to inspections by law enforcement officers violates its Fourth Amendment rights. That provision is stricken from the injunction. Adust's point of error is sustained.

We sustain Adust's third point of error, MODIFY the injunction and, as modified, AFFIRM.

■

153 Cal.Rptr. 746, 749–51 (4th Dist.1979); *State v. Barnett,* 389 So.2d 352 (La.1980); *People v. Tinneny,* 99 Misc.2d 962, 417 N.Y.S.2d 840, 845–46 (1979); taverns, *State v. Williams,* 84 N.J. 217, 417 A.2d 1046, 1048–50 (1980) (dictum); and massage parlors, *Pollard v. Cockrell,* 578 F.2d 1002, 1014 (5th Cir.1978).

Courts have struck down warrantless administrative inspections in the following contexts: trucking, *United States v. Shaefer,* 637 F.2d 200 (3d Cir.1980); residential real estate, *Hometown Co–Op. Apts. v. City of Hometown,* 495 F.Supp. 55 (N.D.Ill.1980) (point-of-sale inspection); adult book stores, *State v. Huddleston,* 412 A.2d 1148, 1156–57 (Del.Super.Ct.1980); and physicians' offices or clinics, *Margaret S. v. Edwards,* 488 F.Supp. 181, 214–17 (E.D.La.1980); *Hawaii Psychiatric Soc'y v. Ariyoshi,* 481 F.Supp. 1028, 1045–50 (D.Hawai'i 1979).