OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS


August 29, 2000

Mr. Allen M. Hymans
Executive Director
Texas State Board of Podiatric
 Medical Examiners
P.O. Box 12216
Austin, Texas 78711

Opinion No. JC-0274

Re: Authority of the Texas State Board of Podiatric Medical Examiners to conduct warrantless on-site compliance inspections of its licensees and their premises (RQ-0211-JC)

Dear Mr. Hymans:

You have requested our opinion regarding the authority of the Texas State Board of Podiatric Medical Examiners to conduct warrantless on-site compliance inspections of its licensees and their premises. For the reasons indicated below, we conclude that it may not do so.

The Board of Podiatric Medical Examiners ("the Board") is directed by statute to:

> adopt reasonable or necessary rules and bylaws consistent with the law regulating the practice of podiatry, the law of this state, and the law of the United States to govern:
>
> (1) its proceedings and activities;
>
> (2) the regulation of the practice of podiatry; and
>
> (3) the enforcement of the law regulating the practice of podiatry.

TEX. OCC. CODE ANN. § 202.151 (Vernon 2000). In addition, the Board is required by rule to:

> develop a system to monitor a podiatrist's compliance with this chapter. The system must include:
>
> (1) procedures for determining whether a podiatrist is in compliance with an order issued by the board; and
>
> (2) a method of identifying and monitoring each podiatrist who represents a risk to the public.

*Id.* § 202.602. In accordance with these statutory directives, the Board has adopted a rule authorizing it to:

> conduct a compliance monitoring program in which podiatric practices are inspected on an unannounced basis to insure that licensees are complying with the requirements of the applicable statutes and rules. Those items to be inspected include, but are not limited to, display of licenses; compliance with required consumer information; continuing education requirements; sanitation; patient record completion; drug security; drug accountability; and compliance with other state and federal laws.

22 TEX. ADMIN. CODE § 376.11(a) (2000). You ask whether this rule is within the Board's statutory authority.

This office recently had occasion to address a similar issue regarding the authority of the Polygraph Examiners Board to conduct on-site inspections of its licensees' places of business. As we said in Attorney General Opinion JC-0204, the matter of on-site inspection of a private commercial enterprise implicates the Fourth Amendment to the United States Constitution, and article 1, section 9, of the Texas Constitution. *See* Tex. Att'y Gen. Op. No. JC-0204 (2000) at 1. Following the Texas Court of Criminal Appeals, the opinion applied United States Supreme Court precedent "to determine the constitutionality, under both the federal and state constitutions, of the on-site inspections." *Id.* Attorney General Opinion JC-0204 observed that "[n]ormally, authorities may not search, without a warrant, portions of a commercial enterprise that are not open to the public unless the commercial enterprise is involved in a 'closely regulated industry.'" *Id.* at 2; *see also Santikos v. State*, 836 S.W.2d 631, 632-33 (Tex. Crim. App. 1992) (en banc).

The United States Supreme Court has recognized four industries as "closely regulated": automobile junkyards, coal mining, firearms and ammunition sales, and the liquor industry. *See New York v. Burger*, 482 U.S. 691, 703-04, 719 n.2 (1987); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978). Other courts have extended the list to include, *inter alia*, commercial fishing, *see United States v. Raub*, 637 F.2d 1205, 1209-11 (9th Cir. 1980) (salmon fishing in Puget Sound area); pharmaceuticals, *see United States v. Schiffman*, 572 F.2d 1137, 1142 (5th Cir. 1978) ("pervasively regulated" business subject to inspection); and massage parlors, *see Pollard v. Cockrell*, 578 F.2d 1002, 1014-15 (5th Cir. 1978); *see generally, Adust Video v. Nueces County*, 996 S.W.2d 245, 255 n.5 (Tex. App.–Corpus Christi 1999, no pet.). Two federal courts have, however, struck down statutes that authorized warrantless searches of medical facilities. *See Margaret S. v. Edwards*, 488 F. Supp. 181, 214-17 (E.D. La. 1980); *Hawaii Psychiatric Soc'y v. Ariyoshi*, 481 F. Supp. 1028, 1045-52 (D. Hawaii 1979).

In the *Margaret S.* case, the state of Louisiana had attempted to require that both medical records and abortion facilities be open for inspection at any time by the Department of Health and Human Resources. The state argued that the medical profession should be categorized as a closely

regulated industry because the state regulates the initial licensing of doctors and conducts some inspections, and because the practice of medicine is a privilege that may be revoked. *See Margaret S.*, 488 F. Supp. at 215-16. The court observed that "[t]he medical profession, unlike the liquor industry, has no 'long history' of warrantless state inspection." *Id.* at 216. Furthermore, "the practice of medicine [is not] an industry in which heavy regulation is crucial to assure careful distribution of dangerous weapons." *Id.* at 216. "Rather, it is a profession with a history of respect towards the recognized need for privacy in the doctor-patient relationship." *Id.* As a result, the court found that "the health industry . . . is not a closely regulated industry within the meaning of *Marshall v. Barlow's, Inc*, 436 U.S. 307 (1978)." *Id.* at 217. In our opinion, this conclusion is sound. We have found no evidence of pervasive regulation of the practice of podiatric medicine in Texas, nor any Texas case that would furnish any basis for concluding that it should be so characterized.

Even if podiatric medicine were to be regarded as a "closely regulated industry," however, the Board would not be authorized under present circumstances to conduct warrantless inspections. In the first place, the statute does not itself authorize warrantless inspections. Rather, section 202.602 merely directs the Board to "develop a system to monitor a podiatrist's compliance with this chapter." TEX. OCC. CODE ANN. § 202.602 (Vernon 2000). Warrantless random inspections are permitted only by Board rule. It is well established that an administrative agency has only those powers expressly granted and those necessarily implied therefrom. *See City of Sherman v. Public Util. Comm'n*, 643 S.W.2d 681, 686 (Tex. 1983); *Stauffer v. City of San Antonio*, 344 S.W.2d 158, 160 (Tex. 1961). In our opinion, the Board rule at issue here cannot be reasonably inferred from the language of section 202.602.

Another portion of chapter 202 requires a licensed podiatrist to "conspicuously display both the license and an annual renewal certificate for the current year of practice at the location where the person practices." TEX. OCC. CODE ANN. § 202.262(a) (Vernon 2000). Although the statute requires the podiatrist to "exhibit the license and renewal certificate to a board representative on the representative's official request for examination or inspection," *see id.* 202.262(b), this provision does not authorize the Board's representative to conduct warrantless searches or indeed, to enter a portion of the premises that is not open to the public. With regard to the matter of "drug security" referenced in the Board's rule, the director of the Department of Public Safety or his designee may, for the purpose of inspection, "at any reasonable time" enter premises where controlled substances are kept, *see* TEX. HEALTH & SAFETY CODE § 481.181 (Vernon 1992), and a person "required to keep records relating to dangerous drugs" must "allow the official or employee to inventory all stocks of dangerous drugs." *Id.* § 483.025. But no statute commits such a role to the Board of Podiatric Medical Examiners.

Furthermore, the legislature has in at least one other instance specifically conferred upon an administrative agency the authority to conduct warrantless inspections. Section 101.04 of the Alcoholic Beverage Code declares that "[b]y accepting [an alcoholic beverage] license or permit, the holder consents that the [Alcoholic Beverage] [C]ommission, an authorized representative . . . , or a peace officer may enter the licensed premises at any time to conduct an investigation or inspect the premises for the purpose of performing any duty imposed by this code." TEX. ALCO. BEV. CODE

ANN. § 101.04 (Vernon 1995); *see also Santikos v. State*, 836 S.W.2d at 632. The absence of such a provision in the law governing podiatrists leads to the conclusion that the legislature did not intend to confer such power.

Finally, even if we could infer the permissibility of warrantless inspections from section 202.602, that provision would be inadequate to satisfy constitutional requirements. In *Adust Video v. Nueces County*, 996 S.W.2d 245 (Tex. App.–Corpus Christi 1999, no pet.), the court struck down that portion of a permanent injunction against an adult book and video store that required the owners of the establishment to consent to random inspections. The court found that "[t]he absence of conditions on the inspections violates the constitutional requirements for such administrative searches." *Id.* at 256. "The injunction must have a 'properly defined scope, and it must limit the discretion of the inspecting officers.'" *Id.* (citing *New York v. Burger*, 482 U.S. at 703). As with the injunction in *Adust Video*, so with the statute at issue here. Even if the power to conduct warrantless inspections could somehow be inferred from section 202.602, nothing in the statute places any limitations on that authority.

We conclude that the Texas State Board of Podiatric Medical Examiners is without authority to conduct warrantless on-site compliance inspections of its licensees or their premises. In light of our answer to this question, we need not respond to your other inquiries.

## S U M M A R Y

The Texas State Board of Podiatric Medical Examiners is not authorized to conduct warrantless on-site compliance inspections of its licensees or their premises.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General - Opinion Committee