OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



April 4, 2000

Mr. Frank Di Tucci                            Opinion No. JC-0204
Executive Officer
Polygraph Examiners Board                     Re: Whether the Polygraph Examiners Board may
P.O. Box 4087                                 inspect a polygraph examiner's work product in the
Austin, Texas 78773-0001                      examiner's place of business without a search
                                              warrant, and related question  (RQ-0140-JC)

Dear Mr. Di Tucci:

You ask whether, under the Polygraph Examiners Act, chapter 1703 of the Occupations Code (the "Act"), *see* TEX. OCC. CODE ANN. § 1703.001 (Vernon 2000), the Polygraph Examiners Board (the "Board") may inspect a polygraph examiner's work product at the examiner's place of business. *See* Letter from Frank Di Tucci, Executive Officer, Polygraph Examiners Board, to Honorable John Cornyn, Texas Attorney General (Nov. 2, 1999) (on file with Opinion Committee). Should we determine that the Board may do so, you ask us to articulate the circumstances in which such an inspection may be done. *See id.* We presume you ask about warrantless inspections that are not conducted in response to a consumer-filed, formal complaint. For the sake of brevity, we refer to these inspections as "on-site inspections."

Guided by case law of the United States Supreme Court and courts of this State, we conclude that the Act does not authorize the Board to conduct an on-site inspection without a warrant. Given this conclusion, we need not answer your second question.

The legality of on-site inspections of a private commercial enterprise implicates the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution. *See* Tex. Att'y Gen. Op. No. JC-0021 (1999) at 3. Both constitutional provisions protect the right of the people to be "secure in their persons, houses, papers," and possessions from "unreasonable searches and seizures." U.S. CONST. amend. IV; *see* TEX. CONST. art. I, § 9. A routine inspection is a search insofar as the right to be free from unreasonable searches and seizures is concerned. *See Nesloney v. State*, 711 S.W.2d 636, 638-39 (Tex. Crim. App. 1986) (en banc).

We apply United States Supreme Court precedent to determine the constitutionality, under both the federal and the state constitution, of the on-site inspections you propose. To analyze the constitutionality of a statute authorizing warrantless administrative searches, "[t]he Texas Court of Criminal Appeals . . . applies United States Supreme Court precedent." Tex. Att'y Gen. Op. No.

JC-0021 (1999) at 3; *see Santikos v. State,* 836 S.W.2d 631, 632 n.1 (Tex. Crim. App. 1992) (en banc) (and cases cited therein).

Normally, authorities may not search, without a warrant, portions of a commercial enterprise that are not open to the public unless the commercial enterprise is involved in a "closely regulated industry." *See Santikos,* 836 S.W.2d at 632-33; *Adust Video v. Nueces County,* 996 S.W.2d 245, 255 (Tex. App.–Corpus Christi 1999, no pet.); Tex. Att'y Gen. Op. No. JC-0021 (1999) at 3.

A closely regulated industry is subject to government regulation so pervasive, *see New York v. Burger,* 482 U.S. 691, 700-01 (1987); Tex. Att'y Gen. Op. No. JC-0021 (1999) at 3, that "the owner of commercial property [within the industry] cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." *Donovan v. Dewey,* 452 U.S. 594, 600 (1981); *see Adust Video,* 996 S.W.2d at 255; Tex. Att'y Gen. Op. No. JC-0021 (1999) at 3. For example, the Gun Control Act of 1968, 18 U.S.C. §§ 921-930 (1994 & Supp. IV 1998), provides a "sufficiently comprehensive and predictable inspection scheme" so that a gun dealer has "knowledge that his records, firearms, and ammunition will be subject to effective inspection. . . . The dealer is not left to wonder about the purposes of the inspector or the limits of his task." *United States v. Biswell,* 406 U.S. 311, 316 (1972). The United States Supreme Court has recognized four industries as "closely regulated": automobile junkyards; coal mining; firearm and ammunition sales; and the liquor industry. *See Adust Video,* 996 S.W.2d at 255 (citing *Burger,* 482 U.S. at 703-04 (automobile junkyards); *Donovan v. Dewey,* 452 U.S. 594, 598-99 (1981) (coal mining); *United States v. Biswell,* 406 U.S. 311, 316 (1972) (firearm and ammunition sales); *Colonnade Catering Corp. v. United States,* 397 U.S. 72 (1970) (liquor industry)); *see also Adust Video,* 996 S.W.2d at 255 n.5 (listing lower court cases upholding warrantless administrative searches in other industries).

Even if a commercial enterprise is in a closely regulated industry, authorities may conduct a warrantless search of the enterprise only if the statutory scheme authorizing warrantless searches satisfies a tripartite test. *See Santikos,* 836 S.W.2d at 633; Tex. Att'y Gen. Op. No. JC-0021 (1999) at 3. First, the statutory scheme must further a substantial government interest. *Santikos,* 836 S.W.2d at 633; Tex. Att'y Gen. Op. No. JC-0021 (1999) at 3. "Second, the warrantless inspection must be necessary to further" the statutory scheme. *Santikos,* 836 S.W.2d at 633; Tex. Att'y Gen. Op. No. JC-0021 (1999) at 3. Third, the statutory scheme "must provide 'a constitutionally adequate substitute for a warrant' so as to limit" an inspecting officer's discretion. *Santikos,* 836 S.W.2d at 633; Tex. Att'y Gen. Op. No. JC-0021 (1999) at 3. The inspection must be limited by statute "in time, place, and scope." *Santikos,* 836 S.W.2d at 633; Tex. Att'y Gen. Op. No. JC-0021 (1999) at 3.

We thus consider whether the Board has sufficient authority under the Act constitutionally to conduct warrantless on-site inspections. We are directed to liberally construe the Act to regulate

> (1) a person who claims to be able to use an instrument to
> detect deception or verify the truth of a statement; and

(2) the instrument used by that person.

TEX. OCC. CODE ANN. § 1703.002 (Vernon 2000). In the context of the Act, an "instrument" is "a device used to test a subject to detect deception or verify the truth of a statement by recording visually, permanently, and simultaneously a subject's cardiovascular and respiratory patterns." *Id.* § 1703.003(3). An instrument may be "a lie detector, polygraph, deceptograph, or any other similar or related device." *Id.*

The Board, consisting of six members appointed by the governor, *see id.* § 1703.051(a), is required generally to "adopt rules and prescribe forms to administer and enforce" the Act. *Id.* § 1703.103. *But see id.* § 1703.104 (limiting Board's authority to adopt rules restricting licensed polygraph examiners' advertising or competitive bidding). The Board must compile "an information file" about each consumer complaint that has been filed with the Board regarding a licensed polygraph examiner, and the Board may conduct an "undercover investigation" to investigate a complaint. *See id.* § 1703.153.

No one may use an instrument "to detect deception or verify the truth of a statement" unless the individual has obtained a polygraph-examiner license or polygraph-examiner-internship license from the Board. *See id.* §§ 1703.201(a), .208; *see also id.* §§ 1703.202-.207 (licensure requirements). A licensed polygraph examiner timely must apprise the secretary of the Board of a change in the examiner's "principal business location," *see id.* § 1703.301, and an examiner also must register "with the county clerk of the county in which the examiner maintains a business address," *see id.* § 1703.302(a). An examiner or intern must "prominently display" his or her license at the licensee's place of business or place of internship. *See id.* § 1703.303. A licensee's instruments must visually, permanently, and simultaneously record patterns of a subject's physiological changes, such as cardiovascular and respiratory patterns. *See id.* § 1703.305(a). Failure to use an instrument that does not comply with the Act's instrumentation requirements is subject to penalties and may be enjoined. *See id.* § 1703.305(b).

The Board may deny or suspend the application or license of an applicant or licensee who violates the Act or a valid rule under the Act, or who "fails to provide within a reasonable time information requested by the Board's secretary as the result of a formal complaint to the Board alleging a violation of" the Act. *Id.* § 1703.351(a)(1), (11), (b). The Board also may petition a district court for an order to enjoin violations of the Act. *See id.* § 1703.401(a). In addition, a violation of the Act that does not involve a violation of confidentiality is a misdemeanor punishable by a fine of at least $100 but no more than $1,000; confinement in county jail for a term of six months or less; or both. *See id.* §§ 1703.402, .403.

We conclude that the Board may not conduct warrantless on-site inspections of polygraph examiners' commercial premises. First, the Act does not expressly or implicitly authorize an on-site inspection without a warrant. An administrative agency has all powers expressly given to it as well as those that are necessarily implied from the express powers. *See City of Sherman v. Public Util. Comm'n,* 643 S.W.2d 681, 686 (Tex. 1983); *accord Stauffer v. City of San Antonio,* 344 S.W.2d 158,

159 (Tex. 1961); *Texas Parks & Wildlife Dep't v. Callaway*, 971 S.W.2d 145, 148 (Tex. App.–Austin 1998, no pet.); Tex. Att'y Gen. Op. Nos. JC-0064 (1999) at 4; DM-101 (1992) at 4. The Act does not expressly permit the Board to conduct warrantless on-site inspections, nor does it expressly notify a licensee or applicant that he or she, the instruments, or certain business records may be subject to on-site inspection. Moreover, nothing in the Act expressly limits the Board's authority in any possible inspection. And given the total lack of any statutory language contemplating warrantless on-site inspections, we cannot conclude that the Act implicitly permits the inspections. Particularly where the constitution requires specific authorization to conduct warrantless searches, we cannot infer the power to do so from the Board's vague power to regulate the practice of polygraph examination, *see* TEX. OCC. CODE ANN. § 1703.002 (Vernon 2000), or to adopt rules to enforce the Act, *see id.* § 1703.103.

Second, we doubt that a court would find the polygraph examination industry to be "closely regulated" in the context of the Fourth Amendment to the United States Constitution or of article I, section 9 of the Texas Constitution so that polygraph examiners constitutionally may be subject to warrantless searches. We have found no judicial decision determining that the field of polygraph examination is a closely regulated industry. Polygraph examiners have not been subject to "a long tradition of close government supervision." *See Burger*, 482 U.S. 691, 699 (citing *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978)). Nor does the Act "pervasively regulate" the industry so as to reduce an owner's expectation of privacy. *See id.* at 701 (citing *Donovan v. Dewey*, 452 U.S. 594, 600, 606 (1981)). Although the Act requires a polygraph examiner to be licensed, *see* TEX. OCC. CODE ANN. §§ 1703.201-.208 (Vernon 2000); annually to renew the license, *see id.* §§ 1703.251, .253; and to register the address of the principal place of business with the Board, *see id.* § 1703.301; *see also id.* § 1703.302 (requiring polygraph examiner to register address with county clerk), the Act says little about how a polygraph examiner must operate his or her business; how an examiner is to examine a subject, *but see id.* § 1703.351(a)(7) (requiring polygraph examiner to inform subject of nature of examination and that subject's participation is voluntary); or, in particular, what records a polygraph examiner is to create or maintain, *cf. id.* § 1703.351(a)(10) (indicating that examiner may be punished for wilfully making "false report concerning an examination"). Thus, nothing points to a conclusion that polygraph examiners participate in a closely regulated industry and may be subject to warrantless searches.

Third, even if a court found that the field of polygraph examination is a closely regulated industry, the Act does not satisfy the tripartite test for determining the constitutionality of warrantless searches. The Act particularly fails to provide "a constitutionally adequate substitute for a warrant" so as properly to limit the discretion of the officers performing the inspection. *See Santikos*, 836 S.W.2d at 633. Nothing in the Act explicitly or implicitly limits the Board's authority with respect to the time, place, or scope of an on-site inspection. Accordingly, the Board may not constitutionally conduct warrantless on-site inspections.

Finally, the Board may not use a regulation to authorize on-site inspections. The Board has adopted a rule requiring a licensed polygraph examiner to retain "polygraph charts, question sheets, written reports, data sheets, films, audio and video tapes, opinions of the examiner from chart

analysis, and other pertinent papers" for at least two years from the date of the examination. 22 TEX. ADMIN. CODE § 395.4 (1999) (Polygraph Examiners, Code of Operating Procedure of Polygraph Examiners). These materials are "subject to the inspection of the board upon written request from the secretary." *Id.* On its face, this regulation does not authorize warrantless on-site inspections. In addition, the Board may not apply the rule in such a way as to permit the Board to exceed its statutory powers. *See* Tex. Att'y Gen. Op. No. DM-336 (1995) at 2.

## S U M M A R Y

The Polygraph Examiners Board may not inspect a polygraph examiner's work product in the examiner's place of business without a search warrant.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General - Opinion Committee